BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway
Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com

CHARLES D. AXELROD, ESQ.
California Bar No. 39507
**FOX ROTHSCHILD LLP**
1800 Century Park East
Suite 300
Los Angeles, California 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828

*Counsel for Timothy L. Blixseth*

Electronically filed on April 20, 2011

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>TIMOTHY L. BLIXSETH,<br><br>Alleged Debtor. | Case No. BK-S-11-15010-BAM<br><br>Chapter 7 (Involuntary)<br><br>**RESPONSE TO ORDER TO SHOW CAUSE AND COUNTER-MOTION TO DISMISS**<br><br>Hearing Date:   April 22, 2011<br>Hearing Time:   1:00 p.m. |

Alleged debtor, Timothy L. Blixseth ("*TLB*" or "*Mr. Blixseth*"), by and through his counsel, the law firm of Fox Rothschild LLP, hereby submits this Response to Petitioning Creditors' Response. This Response to Order to Show Cause Why Venue in this District Is Proper and Why Transfer of Case Is Not Appropriate, and Counter-Motion to Dismiss (collectively "*Motion to Dismiss*") is made and based upon the following points and authorities, the Declaration of Timothy

1  L. Blixseth and exhibits attached thereto (the "<u>Blixseth Declaration</u>"),[1] filed concurrently herewith
2  and in support hereof, the pleadings filed with the Court in this matter, and any oral argument the
3  Court may entertain at the hearing at the date and time set forth above.

## INTRODUCTION

In the interest of justice, the involuntary bankruptcy petition filed against alleged debtor Mr. Blixseth should be dismissed since it is manifest from the supporting declaration of Mr. Blixseth, filed concurrently herewith and incorporated herein by this reference (the "<u>TLB Declaration</u>"), that the State of Montana's purported tax claim is unequivocally the subject of a bona fide dispute and contingent and that the other two petitioners, the State of Idaho and State of California, have withdrawn from the involuntary petition as a result of their claims being satisfied, although they too were disputed by Mr. Blixseth. Finally, Mr. Blixseth has no outstanding undisputed creditors.[2] Simply stated, there is no reasonable argument in support of continuing the involuntary case against TLB.

In all events, as demonstrated by the TLB Declaration, the District for Nevada is an improper venue for these proceedings since TLB neither resides nor is domiciled in said District and neither his principal place of business or principal assets are located in said District.

In the highly unlikely event that this Court determines to transfer these proceedings rather than dismiss them, the interest of justice precludes such transfer being made to the District of Montana as alluded to on page 3 of this Court's Order to Show Cause Why Venue in This District Is Proper and Why Transfer of Case Is Not Appropriate (the "<u>OSC</u>"). That allusion was articulated by this Court in the OSC as being premised on the notion that the Bankruptcy Court for the District of Montana has experience with these matters; whereas, in point of fact, nothing that has taken place in the District for Montana has focused on or even remotely involved whether (i) TLB was generally paying his debts as they come due, which is the sole charging allegation of the involuntary petition;

---

[1] Contemporaneously, Mr. Blixseth is seeking to file under seal certain confidential exhibits that are to be attached as exhibits 1, 2 and 5 to the Blixseth Declaration.

[2] <u>See</u> Blixseth Declaration, ¶ 10, and Exhibit 5.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

or (ii) whether any of the petitioning creditors can satisfy the criteria for acting in that capacity set forth in section 303(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"). Rather, TLB is only a defendant in adversary proceedings pending in the District of Montana and, as such, has not voluntarily chosen Montana as a forum. In any event, as discussed below, venue under 28 U.S.C. § 1408 is simply not proper in Montana as a matter of law.

Moreover, the hotly contested nature of the District of Montana adversary proceedings, compounded by the appeals that TLB felt compelled to take from the decisions of the sole sitting bankruptcy judge in the District of Montana, as well as TLB's motion to reassign the matters there to another District, make it substantially more difficult for the Bankruptcy Court for the District of Montana to adjudicate the matters relating to these involuntary proceedings in the idealized manner traditionally represented by the blindfolded statue of justice holding balanced scales. To better actualize that ideal and thereby honor fair play and substantial justice, any transfer of these proceedings must only be to the District of Washington where TLB resides.

## FACTUAL BACKGROUND

A.   **Bona Fide Dispute with Montana Dept. of Revenue ("MDOR").**

MDOR is currently in litigation with Mr. Blixseth before the Montana State Tax Appeals Board ("STAB"). MDOR claims that Mr. Blixseth owes MDOR $56 million in taxes. Mr. Blixseth disputes that he owes this amount. Accordingly, Mr. Blixseth availed himself of his administrative remedies in Montana by timely filing a complaint with STAB on February 10, 2011. Blixseth Declaration, ¶ 26; see also **Exhibit 7** attached thereto, which is incorporated for all purposes herein by this reference. MDOR responded to this complaint by filing a Motion to Strike on March 15, 2011. Blixseth Declaration, ¶ 27; see also **Exhibit 8** thereto, which is incorporated for all purposes herein by this reference. On March 28, 2011, Mr. Blixseth opposed the Motion to Strike and pointed out that MDOR had not timely filed its answer to the STAB Complaint, thus causing a default by MDOR. Blixseth Declaration, ¶ 27; see also **Exhibit 9** attached to the Blixseth Declaration and incorporated for all purposes herein by this reference. On April 11, 2011, STAB denied MDOR's Motion to Strike. Blixseth Declaration, ¶ 27; see also **Exhibit 10** attached to the Blixseth Declaration and incorporated for all purposes herein by this reference. One might credibly

argue that instead of forthrightly dealing with the implications of not timely filing an answer to the STAB Complaint, MDOR decided to remedy that deficiency by trying to gain a litigation advantage over TLB in the STAB proceedings by depriving him of the resources to litigate the STAB proceedings by filing an involuntary petition against him on the basis of a purported $219,000 claim. This argument is supported by the statements that its Chief, Dan Bucks, made to the Associated Press the day after it filed the instant involuntary petition. Blixseth Declaration, ¶ 31; see also **Exhibit 12** attached to the Blixseth Declaration and incorporated for all purposes herein by this reference. ("Montana intends to use the bankruptcy filing to force payment on approximately $56 million in state taxes that Blixseth had contested, Buck said. 'This is an action by our professional staff to make sure the tax debt is collected,' Buck said.").

Mr. Buck stated to the Associated Press that the purported need for the involuntary petition was because MDOR had "learned there was a transfer of personal assets into a Nevada entity and that was endangering our ability to collect the tax debts we believe are due." Blixseth Declaration, ¶ 31; Exhibit 12. Even if this was a proper use of an involuntary petition, which it is not, MDOR's representations to the Associated Press were totally inaccurate since it has been a matter of public knowledge for years that immediately after his divorce from his ex-wife in August of 2008, Mr. Blixseth transferred his share of the community property into Desert Ranch LLLP, a Nevada entity. This fact became a matter of public knowledge as a result of discovery taken and testimony given in Adversary Proceeding No. 09-14 ("AP-14") in the United States Bankruptcy Court for the District of Montana during April and May of 2009. And MDOR, which was monitoring that litigation closely, knew of these facts probably as early as of May, 2009, but most definitively by August 16, 2010, when the Montana Bankruptcy Court finally issued its Memorandum of Decision following the trial in that case and discussed these facts in that opinion. Blixseth Declaration, ¶ 31; see also **Exhibit 13**, Doc. 575, p. 52, attached to the Blixseth Declaration and incorporated for all purposes herein by this reference. Thus, Mr. Blixseth transferred his assets to Desert Ranch LLLP nearly three years ago as part of his estate planning coming out of a divorce; and MDOR has known of this fact for a long time. Thus, the involuntary petition is nothing more than a pre-text for MDOR to gain a litigation advantage over Mr. Blixseth. Simply put, MDOR wants to remove Mr. Blixseth

from controlling his own litigation against MDOR so that MDOR can skip over litigating the STAB proceedings and proceed straight to collecting on a disputed $56 million tax claim.[3]

Indeed, MDOR and its attorneys know that for it to be a petitioning creditor under 11 U.S.C. § 303(b)(1), it must be the holder of a claim against Mr. Blixseth that is neither contingent as to liability, nor the subject of a bona dispute. This is the allegation it made under oath when it signed the involuntary petition, and yet MDOR and its attorneys know that this is a materially false statement and therefore *per se* bad faith. In re Kidwell, 158 B.R. 203, 217 (Bankr. E.D. Cal. 1993). MDOR's and its attorneys' filing of the involuntary petition knowing that it is not an eligible petitioning creditor is bad faith and subjects them to Rule 9011 sanctions. See Landon v. Hunt, 977 F.2d 829, 832-833 (3rd Cir. 1992) (upholding imposition of Rule 9011 sanctions against attorneys who defended involuntary petition that was unequivocally filed by an ineligible creditor).

As if the STAB proceedings were not prima facie evidence that its purported claim is contingent and the subject of bona fide dispute, on April 13, 2011, MDOR filed a motion within the STAB proceedings acknowledging that resolution of its disputed claim remains subject to the outcome of the STAB proceedings. See Blixseth Declaration, at **Exhibit 11**, p. 3 ("Because Mr. Blixseth's state tax liability was not finally adjudicated prior to the commencement of the involuntary bankruptcy proceedings, the Bankruptcy Court assumes concurrent jurisdiction over

---

[3] The purported tax debt is based on a legal theory already rejected by the IRS which ruled in Mr. Blixseth's favor. Notwithstanding the IRS ruling, the MDOR, Credit Suisse and the Credit Suisse/Yellowstone Club Liquidating Trust are pursuing a litigation scheme to gain judgments against Mr. Blixseth in several adversary proceedings based on a reorganization plan, the confirmation order for which has now been reversed (see Docket No. 72, Case No. 09-47, attached as **Exhibit 6** to the Blixseth Declaration), which gave control of the litigation to Credit Suisse through the Credit Suisse/LT. Credit Suisse and the Credit Suisse/LT have appealed to the Ninth Circuit Court of Appeals (the "Ninth Circuit") which, based upon its indication in its denial of a Petition for Certification that the AP 14 judgment is not "final," will likely dismiss said appeals. Also pending before the Ninth Circuit is a Motion to Reassign all pending litigation in Montana to another District (see Blixseth Declaration, at **Exhibit 14)**. Accordingly, this involuntary should be viewed as a mere litigation tactic by Credit Suisse/LT and the MDOR acting in concert to obtain a stay of the Ninth Circuit's pending decision to grant TLB's motion to dismiss Credit Suisse's appeal of the reversal of the confirmation order and the reassignment of the adversary proceeding to a District outside Montana. Blixseth Declaration, at ¶ 35.

this dispute."). Thus, there is no question that MDOR is not an eligible petitioning creditor under Bankruptcy Code section 303.

Indeed, in this same filing it appears that MDOR filed the instant petition to impose the automatic stay against Mr. Blixseth in that litigation for the very purpose of short cutting that litigation and having the legitimacy of its claim obscured within these involuntary bankruptcy proceedings through the appointment of a bankruptcy trustee who will likely lack the resources and incentive to vigorously dispute its tax claim. See Blixseth Declaration, Exhibit 11, pp. 2-3 ("Should Mr. Blixseth desire to continue litigating this matter before the Board, he may seek relief from the Bankruptcy Court."); In re Pacific Rollforming, LLC, 415 B.R. 750, 755 (Bankr. N.D. Cal. 2009) (involuntary petition dismissed where purpose of petitioners, who were also litigation opponents of the debtor, was to bleed the debtor of funds to continue its litigation against the petitioners, and put the alleged debtor's litigation claims against petitioners in the hands of a trustee who had neither the resources nor incentive to continue litigating against the petitioners).

**B.    Mr. Blixseth's Relationship with Nevada.**

Mr. Blixseth has no residence in Nevada. Blixseth Declaration, at ¶ 5. Mr. Blixseth is not a domicile of Nevada. Blixseth Declaration, at ¶ 4. He is a domicile of the State of Washington. Id. Mr. Blixseth has no place of business in Nevada. Blixseth Declaration, at ¶ 8. Mr. Blixseth's primary asset is his 98% limited partnership interest in Desert Ranch LLLP. Blixseth Declaration, at ¶ 34. The partnership agreement of Desert Ranch LLLP is maintained in Idaho, not Nevada. Blixseth Declaration, at ¶ 18. The corporate records of Desert Ranch LLLP are maintained in California. Id. Desert Ranch LLLP, however, is merely a holding company of other entities. Blixseth Declaration, at ¶ 17. These other entities' principal assets are real estate holdings in the States of California, Washington and Idaho, as well as the countries of Mexico, and Turks & Caicos. Id. None of Desert Ranch LLLP's holdings have assets in the State of Nevada. Blixseth Declaration at ¶ 21. None of Desert Ranch LLLP's holdings are Nevada entities nor do any of its holdings have a principal place of business or any place of business in Nevada. Blixseth Declaration at ¶ 20, 23. The bookkeeping of Desert Ranch LLLP is conducted in Rancho Mirage, California. Blixseth Declaration, at ¶ 18.

As a holding company for other non-Nevada connected entities, Desert Ranch LLLP has no place of business in Nevada. Blixseth Declaration, at ¶ 17. None of the business decisions for Desert Ranch LLLP are made in Nevada. Blixseth Declaration at ¶ 23. Its only connection to Nevada is that it is organized under the laws of Nevada. Blixseth Declaration at ¶ 17.

Mr. Blixseth's other asset, is his 40% membership interest in Desert Ranch Management LLC, a Nevada limited liability company. Blixseth Declaration at ¶ 19. However, Desert Ranch Management LLC's only asset is its 2% ownership interest in Desert Ranch LLLP. Blixseth Declaration, at ¶ 24. Desert Ranch Management LLC's only function is to be the general partner of Desert Ranch LLLP. Id. None of the members of Desert Ranch Management LLC are Nevada residents or domiciles. Blixseth Declaration, at ¶ 24. As with Desert Ranch LLLP, Desert Ranch Management LLC has no office or place of business in Nevada, nor are any of the decisions for Desert Ranch Management LLC made within the State of Nevada. Blixseth Declaration, at ¶ 22.

Personally, Mr. Blixseth conducts no business in Nevada. Blixseth Declaration, at ¶ 6. Mr. Blixseth owns no property in Nevada. Blixseth Declaration at ¶ 9. In general, Mr. Blixseth has no connection with the State of Nevada.[4]

---

[4] For these same reasons, Mr. Blixseth believes that this District lacks personal jurisdiction over him under the standards set forth in Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir.2006) and In re Western States Wholesale Natural Gas Antitrust Litigation, 2009 WL 455555 at ** 7-9 (D. Nev., Feb 23, 2009). See also Marriott PLP Corporation v. Tuschman, 904 F.Supp. 461, 466 (D. Md. 1995) (citing Shaffer v. Heitner, 433 U.S. 186, 216 (1977) for rule that a limited partner's interest in a limited partnership formed under the laws of a specific state, without more, does not subject that limited partner to the jurisdiction of that state); China North East Petroleum Holding, LTD. v. Topworth Assets Limited, 2007 WL 1746332 at * 3 (D. Nev. June 17, 2007) (mere ownership of stock in company formed under Nevada law is insufficient to confer personal jurisdiction); Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio, 870 F.Supp. 1102, 1106 (S.D. Ga. 1994) (nationwide service of process statute does not end personal jurisdiction due process inquiry with respect to the forum state); but see Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309 (9th Cir. 1985) (holding that nationwide service of process statute in Securities Exchange Act negated requirement of minimum contacts with the forum state analysis).

### C. Using Involuntary Petition as a Litigation Tactic Supports Dismissal of the Involuntary Petition.

MDOR has initiated this involuntary bankruptcy to gain a litigation advantage over Mr. Blixseth and this is precisely the type of bad faith conduct that warrants dismissal of the involuntary petition.

In the 9th Circuit, whether an involuntary bankruptcy petition was filed in bad faith is determined on an objective basis by asking what a reasonable person would believe. In re Wavelength, Inc., 61 B.R. 614, 620 (9th Cir. BAP 1986); In re C & C Jewelry Mfg., Inc., 373 Fed.Appx. 775,¶ 2 (9th Cir. 2010) (see 9th Cir. Rule 36-3). As a matter of law, a petitioning creditor who makes a materially false statement on the involuntary petition is guilty of bad faith. In re Kidwell, 158 B.R. 203, 217 (Bankr. E.D. Cal. 1993).

Also informing the analysis is whether the involuntary petition is being used as a "substitute for customary collection procedures." In re Wavelength, Inc., 61 B.R. at 619 (quoting In re Advance Press & Litho, Inc., 46 B.R. 700, 703 (D.Colo.1984)); In re Cannon Express Corp., 280 B.R. 450, 455 (Bankr. W.D. Ark. 2002) ("Using an involuntary petition for the purpose of collecting a debt is an improper use of the Court.").

Additionally, using an involuntary petition to gain a litigation advantage over an alleged debtor with respect to a disputed claim is evidence of bad faith, particularly when the petition is engineered to deprive the alleged debtor of the funds to prosecute the litigation over the disputed claim. In re Pacific Rollforming, LLC, 415 B.R. 750, 755 (Bankr. N.D. Cal. 2009) (involuntary petition dismissed where purpose of petitioners, who were also litigation opponents of the debtor, was to bleed the debtor of funds to continue its litigation against the petitioners); In re Westerleigh Development Corp., 141 B.R. 38, 41 (Bankr. S.D.N.Y. 1992) (involuntary petition cannot be used as an additional litigation "weapon" to resolve two-party disputes); In re WLB-RSK Venture, 296 B.R. 509, 515 (Bankr. C.D. Cal. 2003) (involuntary petition filed in bad faith when done to gone a litigation advantage after years of failed litigation by the petitioner); In re TRED Holdings, L.P., 2010 WL 3516171 **7-8 (Bankr. E.D. Tex., Sept. 3, 2010) (involuntary petition filed to gain litigation advantage is bad faith).

All the indicia of bad faith objectively exist. As discussed above, MDOR's purported $219k tax claim against Mr. Blixseth upon which it claims eligibility to be a petitioning creditor is unequivocally contingent and subject to a bona fide dispute in the STAB proceedings. See In re Vortex Fishing Systems, Inc., 277 F.3d 1057, 1064, 1066-1067 (9th Cir. 2002) (discussing standards used to establish when a bona fide dispute exists as a result of pending litigation between alleged debtor and petitioning creditor and concluding that the involuntary petition was properly dismissed because several of the petitioning creditors were ineligible as a result of their debt being disputed in pending litigation, concluding that the involuntary petition was filed as part of a larger "acrimonious" business dispute). It nevertheless filed the involuntary petition to gain a litigation advantage over Mr. Blixseth and shortcut the STAB proceedings. This is textbook bad faith.

## THE INVOLUNTARY PETITION MUST BE DISMISSED

### A. Venue Is Improper.

Federal Rule of Bankruptcy Procedure 1011(b) allows an alleged debtor to contest an involuntary petition by raising any of the defenses set forth in Federal Rule of Civil Procedure 12. Rule 12(b)(3) sets forth the defense of improper venue as a ground for complete dismissal of an involuntary petition. Pursuant to 28 U.S.C. § 1408, venue of a case under Title 11 is only proper "in the district court for the district –

> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

Venue is improper in this District under both subsections (1) and (2) of 28 U.S.C. § 1408.

### (1) Venue Is Improper Under 28 U.S.C. § 1408(1).

As discussed above, Mr. Blixseth has never resided in Nevada, he has never had a domicile in Nevada, he has never had a place of business in Nevada and he has never had his assets in Nevada. That Mr. Blixseth's principal asset, his limited partnership interest in Desert Ranch LLLP,

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1  is a Nevada entity, does not mean that his principal asset is located in Nevada.  As discussed above,
2  Desert Ranch LLLP is merely a holding company for other various entities, none of which are
3  Nevada entities.  Desert Ranch LLLP has no place of business in Nevada; it has no office in Nevada
4  and none of the decisions for Desert Ranch LLLP are made in Nevada.  Desert Ranch LLLP holds
5  no assets that are located in Nevada.  Moreover, none of the entities owned by Desert Ranch LLLP
6  hold any assets in Nevada, nor do they have any place of business in Nevada.  It therefore cannot be
7  said that Mr. Blixseth has any assets, let alone principal assets, in Nevada.  In short, simply because
8  Desert Ranch LLLP is a Nevada entity, does not mean that it is "located" in Nevada for purposes of
9  28 U.S.C. § 1408(1).

10  When determining proper venue under section 1408(1) for a bankruptcy of a limited
11  partnership, courts have found that "domicile" or "residence" inquiries are meaningless.  See In re
12  Peachtree Lane Associates, Limited, 150 F.3d 788, 792 (7th Cir. 1998); In re 1606 New Hampshire
13  Avenue Associates, 85 B.R. 298, 302 (Bankr. E.D. Pa. 1988) (citing Colliers for rule that a
14  partnership has no "domicile" or "residence"); In re LaGuardia Associates, L.P., 316 B.R. 832, 836
15  (Bankr. E.D. Pa. 2004) (same).  Instead, the only inquiry in determining venue for a partnership or
16  limited partnership is to look at the location of the limited partnership's principal assets or principal
17  place of business.  In re Peachtree Lane Associates, 150 F.3d at 792; In re Bell Tower Associates,
18  Ltd., 86 B.R. 795, 799 (Bankr. S.D.N.Y. 1988); In re Nantucket Apartments Associates, 80 B.R.
19  154, 156 (Bankr. E.D. Mo. 1987); In re FRG, Inc., 107 B.R. 461, 469 (Bankr. S.D.N.Y. 1989); In re
20  Monterey Equities-Hillside, LP, 73 B.R. 749, 753 (Bankr. N.D. Cal. 1987); see also In re 1606 New
21  Hampshire Avenue Associates, 85 B.R. at 301-302 (giving no weight in venue analysis to place
22  where certificates of limited partnership were filed).

23  Similarly, when determining the "citizenship" of a limited partnership, limited liability
24  company or similar unincorporated entity for purposes of diversity jurisdiction, the courts do not

look to the state in which the entity is formed but rather the residence or domicile of each partner or member.  See <u>Johnson v. Columbia Properties Anchorage, LP</u>, 437 F.3d 894, 899 (9th Cir. 2006).[5]

Because Desert Ranch LLLP has no assets or place of business in Nevada, nor are any of its partners Nevada residents, a bankruptcy of Desert Ranch LLLP would not properly be venued in Nevada.  It therefore makes no logical sense under 28 U.S.C. § 1408(1) for the Petitioners to venue Mr. Blixseth's bankruptcy in Nevada based solely on Desert Ranch LLLP being formed under the laws of Nevada, when a bankruptcy of Desert Ranch LLLP would not be proper in Nevada in the first place.  Thus, venue in Nevada is not proper under section 1408(1).

Remarkably, in their Response to this Court's OSC, the Petitioners <u>simply assume</u> that the situs of Desert Ranch LLLP and Desert Ranch Management LLC, is Nevada for purposes of 28 U.S.C. § 1408(1) merely because these non-corporate entities are formed under the laws of Nevada.  <u>See</u> Petitioning Creditors' Response, at ¶¶ 5, 8.  Yet, Petitioners fail to cite any case to support this assumption regarding non-corporate entities.  Their assumption is wrong because it ignores the well developed case law cited above regarding the venue analysis to apply to partnerships, limited partnerships and unincorporated entities.  Petitioners' citation to *In re Canavos*, 108 B.R. 55 (Bankr. E.D. Pa. 1989) for the proposition that "[t]he situs of a corporate entity is the state of its incorporation or creation and such state can be a valid venue choice for an individual debtor whose principal asset is that corporation" does not further their argument that venue is proper in Nevada.  Petitioners' Response, at ¶ 11.  While it may be an accurate statement of the law with respect to <u>corporations</u>, it has no applicability to this case because Desert Ranch LLLP is not a corporation and Petitioners have not cited any authority for the proposition that the State in which a limited partnership, partnership or limited liability company is formed is a proper venue standing alone.  By

---

[5] Based on <u>Johnson</u>, an inquiry into the state of formation of Desert Ranch Management LLC to inform the venue analysis is meaningless because under <u>Johnson</u> courts do not look to the state of formation of LLCs to determine the citizenship of LLCs but rather courts look to the citizenship of each member of the LLC to determine the LLC's citizenship; this is the same analysis that courts apply to partnerships.  In any event, Desert Ranch Management LLC is not Mr. Blixseth's principal asset (his 98% limited partnership interest in Desert Ranch LLLP is his principal asset) and therefore it does not factor into the venue analysis under 28 U.S.C. § 1408.

1  contrast, as made clear by <u>Johnson</u>, <u>In re Peachtree Lane Associates, Limited</u>, <u>In re 1606 New
2  Hampshire Avenue Associates</u>, and <u>In re Bell Tower Associates</u>, such unincorporated associations
3  are to be treated differently from corporations and that their situs is not determined by reference to
4  their state of formation but to where their principal assets or business decisions are made.

          **(2)     <u>Venue Is Improper in Montana Under 28 U.S.C. § 1408(2)</u>.**

6        In its OSC issued on April 8, 2011, this Court indicated that venue of this case might be
7  more appropriate in Montana because this Court was somehow aware of bankruptcy proceedings
8  involving Mr. Blixseth there. Under no circumstances would venue be proper in Montana. Under
9  28 U.S.C. § 1408(2), venue of a bankruptcy case is proper in the district "in which there is pending
10 a case under title 11 concerning such person's affiliate, general partner, or partnership."
11       As discussed above, neither Mr. Blixseth nor Desert Ranch LLLP, nor any "affiliate" of Mr.
12 Blixseth's are in bankruptcy in Montana. That Mr. Blixseth and Desert Ranch LLLP are defendants
13 only in adversary "proceedings" is of no moment for purposes of determining venue pursuant to §
14 1408(2).
15       The plain language of §1408(2) allows venue to be proper in a district where an affiliate of a
16 debtor is in a "case under title 11". The word "case" is a term of art in bankruptcy parlance and
17 refers only to the administrative process of reorganizing or liquidating a debtor's debts that is
18 initiated under Bankruptcy Code sections 301, 302 or 303 by the filing of a petition. <u>In re Pioneer
19 Investment Services Company</u>, 946 F.2d 445, 448 n 2 (6th Cir. 1991); <u>In re Southern Industrial
20 Banking Corp.</u>, 189 B.R. 697, 702 (E.D. Tenn. 1992); <u>In re KZK Livestock, Inc.</u>, 221 B.R. 471, 475
21 n 3 (Bankr. C.D. Ill. 1998); <u>In re Jordan</u>, 313 B.R. 242, 249-250 (Bankr. W.D. Tenn. 2004) (rev'd
22 on other grounds). The main bankruptcy "case" is distinguished from "proceedings" (another term
23 of art) that arise within a "case", such as adversary proceedings commenced under F.R.B.P. 7001
24 and contested matters under F.R.B.P. 9014. <u>In re Pioneer Investment Services Company</u>, 946 F.2d
25 at 448 n.2; <u>In re Southern Industrial Banking Corp.</u>, 189 B.R. at 702; <u>In re KZK Livestock, Inc.</u>, 221
26 B.R. at 475 n. 3; <u>In re Jordan</u>, 313 B.R. at 249-250.
27       Thus, when Congress used the term "case under title 11" in section 1408(2), it referred only
28 to a pending main bankruptcy case as sufficient to anchor venue for the bankruptcy of an affiliate of

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

VG1 82874v2 04/20/11          12

a debtor. Not included in the plain language of § 1408(2) is the ability to anchor venue in a district where the debtor is simply a defendant in an adversary "proceeding" arising from a main bankruptcy "case" of a wholly unrelated entity, as is the case here. If Congress intended such a result then it would have used the word "proceeding" in § 1408(2) but it did not.

Accordingly, because neither Mr. Blixseth nor any of his affiliates are in a "case" under the Bankruptcy Code, venue is not proper in the Montana Bankruptcy Court.

### (3) Venue Is Improper in Nevada and Montana, and the Petition Must Be Dismissed.

Because venue is improper in Nevada, this Court has discretion under F.R.B.P. 1014(a)(2) and 28 U.S.C. § 1406 to either transfer the case to a proper district, or dismiss it altogether. See In re Petrie, 142 B.R. 404, 405-406 (Bankr. D. Nev. 1992). Dismissal is appropriate because (i) the involuntary petition was filed in bad faith by MDOR and; (ii) there is no need for a bankruptcy case involving TLB since virtually all undisputed, non-contingent claims, including those of two of the petitioning creditors, have either been paid in full or Mr. Blixseth has made satisfactory arrangements with undisputed creditors. Blixseth Declaration, at ¶ 10. The remaining claims against Mr. Blixseth are disputed and are primarily litigation claims held by the Yellowstone Club Liquidating Trust (which is controlled by Credit Suisse), MDOR and the chapter 7 trustee for the bankruptcy estate of Edra Blixseth (see Adv. Case No. 10-88 in the Montana Bankruptcy Court), all of which are subject to a bona fide dispute. In MDOR's April 13, 2011 filing before the STAB, it admits that "Mr. Blixseth's state tax liability was not finally adjudicated prior to the commencement of the involuntary bankruptcy proceedings" and concedes "that Mr. Blixseth may litigate this matter before the Board or the Bankruptcy Court at his election." As with MDOR, Mr. Blixseth can litigate his remaining disputed claims in their ordinary course, and not before this Court where doing so would only serve the tactical interests of MDOR and the Liquidating Trust.

### B. There Are No Eligible Petitioning Creditors

"Section 303 requires that creditors filing a petition for involuntary bankruptcy against a debtor have claims that are not subject to a bona fide dispute." In re Vortex Fishing Systems, Inc., 277 F.3d 1057, 1064 (9th Cir. 2002). "The burden is on the petitioning creditors to show that no

bona fide dispute exists." <u>Id</u>.  Here, there are no eligible petitioning creditors.  The State of California and the State of Idaho have withdrawn from the involuntary petition.  Blixseth Declaration at ¶ 10, **Exhibits 3** and **4** attached thereto.  Mr. Blixseth disputed those claims of California and Idaho.  Blixseth Declaration, at ¶ 10.  This leaves MDOR as a petitioning creditor.  However, as discussed above, MDOR's claim against Mr. Blixseth is the subject of a bona fide dispute.  Thus, there are no eligible petitioning creditors under Section 303 and therefore this Court should dismiss the involuntary bankruptcy petition altogether.  <u>In re Vortex Fishing Systems, Inc.</u>, 277 F.3d at 1064-1070 (affirming bankruptcy court's dismissal of an involuntary petition after finding that the only eligible petitioner had withdrawn, and that the remaining three petitioners were not eligible because their claims were the subject of a bona fide dispute or did not meet the claim amount requirement).  Moreover, because there were three petitioning creditors on the original petition, this Court is not required to provide notice to other non-petitioning creditors under F.R.B.P. 1003(b) before it dismisses the petition.  <u>In re Vortex Fishing Systems, Inc.</u>, 277 F.3d at 1061-1062.  Indeed, any such notice would be futile because there are no outstanding undisputed creditors of which Mr. Blixseth is aware.  Blixseth Declaration, at ¶ 10.

### C. In the Alternative, Abstention is Appropriate

Bankruptcy Code section 305(a)(1) allows the Court to dismiss a bankruptcy case if "the interests of creditors and the debtor would be better served by such dismissal."  11 U.S.C. § 305(a)(1). While "Congress intended the court to exercise considerable discretion in sifting and weighing grounds for dismissal under Section 305(a)(1)," <u>In re Colonial Ford, Inc.</u>, 24 B.R. 1014, 1021 (Bankr. D. Utah 1982), the Court applies that discretion against the backdrop of the "prime congressional policy underlying the abstention doctrine of § 305(a)," which is "to prevent the commencement and continuation of disruptive involuntary cases.'" <u>Wechsler v. Macke Intern. Trade, Inc. (In re Macke Intern. Trade, Inc.)</u>, 370 B.R. 236, 247 (B.A.P. 9th Cir. 2007) (quoting 2 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy, ¶ 305.01[1]) (15th ed. Rev. 2005).

To determine whether the interests of creditors and the debtor would be better served by suspension, the Court must consider "the totality of the circumstances." <u>Macke Intern. Trade</u>, 370 B.R. at 247.  The legislative history of § 305(a) is instructive:

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

VG1 82874v2 04/20/11           14

> The court may dismiss or suspend [the involuntary petition], ... for example, if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and **an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment.**

Id. (citing H.R. Rep. No. 95-595 at 352 (1977); S.Rep. No. 95-989 at 35-36 (1978)) (emphasis added).

There is case precedent that where as here there is pending litigation between a petitioning creditor in another forum and the involuntary is being used as a litigation tactic the court should invoke abstention. For example, in Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.), 370 B.R. 236 (B.A.P. 9th Cir. 2007) while the bankruptcy court found that it had jurisdiction to order relief on the involuntary petition under § 303, it also found that the involuntary petition was essentially a two-party dispute; there was an out-of-court assignment for the benefit of creditors including a sale of the alleged debtor's assets; the petitioner did not participate in the assignment proceeding; there was an absence of a bankruptcy purpose or need to reorganize; there was pending litigation in another forum; and another forum would be more appropriate for the resolution of any lingering disputes between the parties. The court also found that, in commencing the involuntary case, the petitioner was forum-shopping. Id. Similarly, In re Pacific Rollforming, LLC, 415 B.R. 750, 755 (Bankr. N.D. Cal. 2009) the court found that abstention was in the best interest of creditors. The facts of Pacific Rollforming are highly similar to the case at bar. In contested involuntary Chapter 7 case, debtor opposed entry of order for relief on ground that one or more of petitioning creditors were not qualified petitioners, and alternatively requested abstention. The court found the petitioner was not qualified and that abstention was in the best interests of creditors thus warranting dismissal. In particular, as to the best interests of creditors, the court found it was inescapable that the involuntary petition was basically a litigation tactic on the part of those that oppose Pacific's claims in a pending litigation. The petitioner was a defendant and no creditor that was not litigating against Pacific had elected to join in the involuntary petition, notwithstanding extensive efforts on the part of the petitioners to persuade another creditor to join.

## CONCLUSION

Venue in Nevada is clearly improper and the Court should exercise its discretion to dismiss the involuntary petition both because there is no need for a bankruptcy case involving Mr. Blixseth

VG1 82874v2 04/20/11                                  15

and because the case was filed in bad faith for the purpose of gaining a litigation advantage over Mr. Blixseth so that MDOR can collect on its disputed claim.  If, for reasons that cannot be conceived of by Mr. Blixseth, this Court believes the interest of justice requires him to transfer the case, that transfer must be to the District of Washington where the alleged debtor resides and not to the District for Montana to which the alleged debtor's only material contact is being a defendant in adversary proceedings.  Also, for the sake of fair play and substantial justice, this Court should not stretch to transfer these involuntary proceedings to a District where there is one sitting judge who already is the subject of a reassignment motion by Mr. Blixseth.  Mr. Blixseth does not waive judgment under Bankruptcy Code section 303(i) and prays for judgment against the MDOR, as purported petitioner, for a reasonable attorneys fee in the amount of $50,000 and for damages proximately caused by the involuntary filing or punitive damages should the Court agree with the contention that MDOR filed the petition in bad faith.

DATED this 20th day of April 2011.

**FOX ROTHSCHILD LLP**

By  /s/ Brett A. Axelrod
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone:  (702) 262-6899

CHARLES D. AXELROD, ESQ.
California Bar No. 39507
**FOX ROTHSCHILD LLP**
1800 Century Park East, Suite 300
Los Angeles, California 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
*Counsel for Timothy L. Blixseth*