BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway
Suite 500
Las Vegas, Nevada  89169
Telephone:  (702) 262-6899
Facsimile:  (702) 597-5503
Email: baxelrod@foxrothschild.com

CHARLES D. AXELROD, ESQ.
California Bar No. 39507
**FOX ROTHSCHILD LLP**
1800 Century Park East
Suite 300
Los Angeles, California 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828

*Counsel for Timothy L. Blixseth*

Electronically filed on April 27, 2011

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

TIMOTHY L. BLIXSETH,

Alleged Debtor.

Case No. BK-S-11-15010-BAM

Chapter 7 (Involuntary)

**MOTION FOR SANCTIONS PURSUANT TO FED. R. BANKR. P. 9011(c) AND 11 U.S.C. § 105(a)**

Hearing Date:    May 18, 2011
Hearing Time:    1:30 p.m.

Alleged debtor, Timothy L. Blixseth ("Mr. Blixseth"), by and through his counsel, the law firm of Fox Rothschild LLP, hereby submits this Motion for Sanctions Pursuant to Fed. R. Bankr. P. 9011(c) and 11 U.S.C. § 105(a) (the "Motion") seeking an imposition of sanctions against:  the Montana Department of Revenue ("MDOR"); Dan Bucks, Director of the Montana Department of Revenue and signer of the involuntary petition; Mr. Butler, counsel for MDOR; Mr. Jones, counsel for MDOR; the law firm of Brown McCarroll, L.P., counsel for MDOR; and

VG1 83708v2 04/27/11                    1

1  the law firm of Lionel Sawyer & Collins, local counsel for MDOR.  This Motion is made
2  pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")
3  and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and is based
4  upon the following points and authorities, the Declaration of Christopher J. Conant (the "Conant
5  Declaration") and the exhibit attached thereto and the Omnibus Declaration of Timothy L.
6  Blixseth and exhibits attached thereto (the "Omnibus Blixseth Declaration"), both filed
7  concurrently herewith and in support hereof and incorporated by this reference as if fully set
8  forth herein, the pleadings and papers on file with the Court in this matter, and any oral argument
9  the Court may entertain at the hearing set for the date and time noted above.

## INTRODUCTION

Petitioning creditor MDOR filed an involuntary bankruptcy petition against Mr. Blixseth. In the involuntary petition, MDOR alleged that its purported tax claim was not contingent, nor the subject of a bona fide dispute.  MDOR's allegation represents a knowingly false statement with no evidentiary support.  Moreover, MDOR's petition was filed for the improper purpose of harassing Mr. Blixseth by abusing the Bankruptcy Code to gain a litigation advantage over Mr. Blixseth in the state court litigation where MDOR's purported tax claim is being resolved. Additionally, MDOR admitted in its conversations with the press and in its oral argument before this Court on April 22nd that its purpose in signing and prosecuting the involuntary petition was to foster collection of its alleged debts.  However, the extensive case law discussed below amply establishes that having such a motive is illicit and actionable.  This conduct of MDOR and its attorneys is specifically prohibited by Federal Rule of Bankruptcy Procedure 9011, and this Court must impose monetary sanctions against them as a result.

## FACTUAL BACKGROUND

**A.    Bona Fide Dispute with Montana Dept. of Revenue ("MDOR").**

MDOR is currently in litigation with Mr. Blixseth before the Montana State Tax Appeals Board ("STAB").  MDOR claims that Mr. Blixseth owes MDOR $59 million in taxes.  Mr. Blixseth disputes that he owes this amount.  Accordingly, Mr. Blixseth availed himself of his

Fox Rothschild LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

VG1 83708v2 04/27/11                                2

administrative remedies in Montana by timely filing a complaint with STAB on February 10, 2011. Omnibus Blixseth Declaration, ¶ 28; see also **Exhibit 7** attached thereto (hereinafter "STAB Complaint"). In addition to establishing that MDOR is not entitled to its claim of $59 million in income taxes, Mr. Blixseth's STAB Complaint also contains numerous affirmative defenses that will be fatal to MDOR's tax claim. MDOR responded to the STAB Complaint by filing a Motion to Strike on March 15, 2011 wherein it sought to strike Mr. Blixseth's affirmative defenses. Omnibus Blixseth Declaration, ¶ 29; see also **Exhibit 8** thereto. On March 28, 2011, Mr. Blixseth opposed the Motion to Strike and pointed out that MDOR had not timely filed its answer to the STAB Complaint, thus causing a default by MDOR. Omnibus Blixseth Declaration, ¶ 29; see also **Exhibit 9** attached thereto. On April 11, 2011, STAB denied MDOR's Motion to Strike. Omnibus Blixseth Declaration, ¶ 29; see also **Exhibit 10** attached thereto.

Instead of forthrightly dealing with the implications of not timely filing an answer to the STAB Complaint, and moving forward with the STAB Complaint with the fatal affirmative defenses, MDOR chose an alternative forum to collect the disputed $59 million tax claim. It decided to gain a litigation advantage over Mr. Blixseth in the STAB proceedings by depriving him of the resources to litigate the STAB proceedings through the use of an involuntary bankruptcy proceeding on the basis of a purported $219,000 tax claim. This argument is supported by the statements that its Director, Dan Bucks, made to the Associated Press the day after it filed the instant involuntary petition. See Omnibus Blixseth Declaration, ¶ 31; see also **Exhibit 12** attached thereto ("Montana intends to use the bankruptcy filing to force payment on approximately $56 million in state taxes that Blixseth had contested, Buck said. 'This is an action by our professional staff to make sure the tax debt is collected,' Buck said.").

Mr. Bucks stated to the Associated Press that the purported need for the involuntary petition was because MDOR had "learned there was a transfer of personal assets into a Nevada entity and that was endangering our ability to collect the tax debts we believe are due." Omnibus Blixseth Declaration, ¶ 31; Exhibit 12. Even if this was a proper use of an involuntary petition,

Fox Rothschild LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

which it is not, MDOR's representations to the Associated Press were totally inaccurate since it has been a matter of public knowledge for years that immediately after his divorce from his ex-wife in August of 2008, Mr. Blixseth transferred his share of the community property into Desert Ranch LLLP, a Nevada entity.

This fact became a matter of public knowledge as a result of discovery taken and testimony given in Adversary Proceeding No. 09-14 ("AP-14") in the United States Bankruptcy Court for the District of Montana during April and May of 2009. And MDOR, which was monitoring that litigation closely, knew of these facts probably as early as of May 2009, possibly January 2010,[1] but most definitively by August 16, 2010, when the Montana Bankruptcy Court finally issued its Memorandum of Decision following the trial in that case and discussed these facts in that opinion. See Omnibus Blixseth Declaration, ¶ 31; see also **Exhibit 13**, Doc. 575, p. 52, attached thereto. In fact, MDOR's attorney acknowledged at the April 22nd hearing that it they had been closely monitoring AP-14 and the testimony therein regarding Mr. Blixseth's transfer of assets into Desert Ranch LLLP, as well as Mr. Blixseth's involvement in the Yellowstone Club bankruptcy in general. April 22 Hearing Transcript (defined below), 9:17-21; 13:10-14:7. Thus, Mr. Blixseth transferred his assets to Desert Ranch LLLP nearly three years ago as part of his estate planning coming out of a divorce; and MDOR has known of this fact for a long time. Thus, the involuntary petition is nothing more than a pre-text for MDOR to gain a litigation advantage over Mr. Blixseth. Simply put, MDOR wants to remove Mr. Blixseth from controlling his own litigation against MDOR so that MDOR can skip over litigating the STAB proceedings and proceed straight to collecting on a disputed $59 million tax claim that is currently being litigated.

Indeed, MDOR and its attorneys know that for it to be a petitioning creditor under Bankruptcy Code section 303(b)(1), it must be the holder of a claim against Mr. Blixseth that is

---

[1] See Transcript of Timothy L. Blixseth Deposition taken January 26, 2010 ("Blixseth Deposition Transcript"), at 197:2-222:18. True and correct copies of the pertinent pages from the Blixseth Deposition Transcript are attached to the Omnibus Blixseth Declaration, at **Exhibit 15**.

neither contingent as to liability, nor the subject of a bona dispute.  See In re C&C Jewelry Mfg., Inc., 2001 WL 36340326 at *6 (9th B.A.P. Cir., 2001)[2] stating that "[i]n 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, §§ 1234(a)(1)(A) and (a)(12), 119 Stat. 23 (April 20, 2005) ("BAPCPA"), amended § 303(b) and (h) to modify "bona fide dispute" to refer to disputes 'as to liability *or amount*.' (Emphasis added)."  This is the allegation MDOR made under oath when it signed the involuntary petition, and yet MDOR and its attorneys knew at the time of execution under oath that this was a materially false statement.  MDOR and its attorneys' filing of the involuntary petition knowing that it is not an eligible petitioning creditor is bad faith and subjects them to Bankruptcy Rule 9011 sanctions.  See Landon v. Hunt, 977 F.2d 829, 832-833 (3rd Cir. 1992) (upholding imposition of Rule 9011 sanctions against attorneys who defended involuntary petition that was unequivocally filed by an ineligible creditor).

In addition to the STAB proceedings being *prima facie* evidence that MDOR's purported claim is contingent and the subject of bona fide dispute, on April 13, 2011, MDOR filed a motion within the STAB proceedings acknowledging that resolution of its disputed claim remains subject to the outcome of the STAB proceedings.  See Omnibus Blixseth Declaration, at **Exhibit 11**, p. 3 ("Because Mr. Blixseth's state tax liability was not finally adjudicated prior to the commencement of the involuntary bankruptcy proceedings, the Bankruptcy Court assumes concurrent jurisdiction over this dispute.").  Thus, there is no question that MDOR is not an eligible petitioning creditor under Section 303.

In fact, in this same filing, it appears that MDOR filed the instant petition to impose the automatic stay against Mr. Blixseth in that litigation for the very purpose of short circuiting that litigation and having the question of the legitimacy of its claim obscured within these involuntary bankruptcy proceedings through the appointment of a bankruptcy trustee who will likely lack the

---

[2] The Westlaw citation is correct for purposes of retrieving this document; however, parties should note the citation incorrectly references 2001 as the year of the memorandum, which is dated 2009.  Westlaw has been alerted to the discrepancy, and the citation is under review by its editors.

resources and incentive to vigorously dispute MDOR's tax claim. See Omnibus Blixseth Declaration, Exhibit 11, pp. 2, 3 ("Should Mr. Blixseth desire to continue litigating this matter before the Board, he may seek relief from the Bankruptcy Court."); In re Pacific Rollforming, LLC, 415 B.R. 750, 755 (Bankr. N.D. Cal. 2009) (involuntary petition dismissed where purpose of petitioners, who were also litigation opponents of the debtor, was to bleed the debtor of funds to continue its litigation against the petitioners, and put the alleged debtor's litigation claims against petitioners in the hands of a trustee who had neither the resources nor incentive to continue litigating against the petitioners).

Moreover, at the hearing on the OSC, MDOR's counsel admitted on the record that its intent in filing the involuntary proceeding was to use it as a substitute for state law collection proceedings, which in and of itself is bad faith as discussed below. April 22 Hearing Transcript, 9:17-25; 10:6-25; 14:4-23; 20:7-21:3; 28:19-29:10; 31:19-32:24. True and correct copies of the pertinent pages from an official transcript of the hearing held before the Court on April 22, 2011 (the "April 22 Hearing Transcript") are attached to the Omnibus Blixseth Declaration, at **Exhibit 16**. In particular, Mr. Butler represented to this Court that MDOR filed the involuntary petition in anticipation of collecting on its disputed $59 million tax claim, which is currently being disputed and only in the pleading stage in the STAB proceedings, through the mechanism of the Bankruptcy Code fraudulent transfer statutes. April 22 Hearing Transcript, 9:17-25; 10:6-12. MDOR has turned bankruptcy on its head.

Mr. Blixseth understands that the pre-text for MDOR claiming that its 219,258.00 claim is undisputed is because in the STAB Complaint, Mr. Blixseth contests MDOR's $59 million income tax assessment against him, Mr. Blixseth conceded that the Yellowstone Development, LLC improperly took a $1,800,000 civil penalty imposed for environmental issues as a deduction in 2004 which deduction flowed through to Mr. Blixseth. See STAB Complaint, at ¶ 31 (attached to Omnibus Blixseth Declaration as Exhibit 7). Notwithstanding this concession in the STAB Complaint, Mr. Blixseth then alleged that: "Notwithstanding the Taxpayer's concession concerning the deductibility of the aforementioned civil penalty, the Taxpayer submits that the

resulting Montana income tax liability, if any, cannot be properly determined prior to the full and final resolution of all of the Audit Issues." See STAB Complaint ¶ 32 (emphasis added). In short, even though Mr. Blixseth conceded that the environmental penalty deduction was not proper, Mr. Blixseth made clear that the amount of his resulting income tax liability for that deduction could not be properly calculated until the remaining issues in the STAB proceedings were resolved because those proceedings would necessarily determine what could properly considered Mr. Blixseth's income and therefore the amount of resulting tax liability for the improper environmental penalty deduction. Thus, the amount of Mr. Blixseth's tax liability for the improper environmental penalty deduction is entirely contingent on resolution of the remaining issues in the STAB proceedings and is therefore a contingent debt for purposes of Bankruptcy Code section 303.

## ARGUMENT

**B.     Legal Standard for Imposing Sanctions Under Federal Rule of Bankruptcy Procedure 9011.**

In relevant part, Bankruptcy Rule 9011(b) provides that:

> "By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition … or other paper, an attorney … is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
>
> . . . . .

///

If a petition filed with a bankruptcy court violates any of these requirements, then another party may file a motion pursuant to Bankruptcy Rule 9011(c) to have the bankruptcy court impose sanctions against the offending attorney, party and/or law firm.

In the Ninth Circuit, if Bankruptcy Rule 9011 is violated, then imposition of sanctions is mandatory, not discretionary. In re Chisum, 847 F.2d 597, 599 (9th Cir. 1988).

The purpose of imposing sanctions for violations of Bankruptcy Rule 9011 is to deter future repetition of the offending conduct. Fed. R. Bankr. P. 9011(c)(2). "Rule 11 is to be applied vigorously to 'curb widely acknowledged abuse from the filing of frivolous pleadings....'" In re Grantham Brothers, 922 F.3d 1438, 1441 (9th Cir. 1991) (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 828-32 (9th Cir.1986)) (emphasis added).[3]

When an attorney files an involuntary bankruptcy petition, he or she "certifies via Fed. R. Bankr. P. 9011(b) that the petition is not being presented for an improper purpose, and that the claims are warranted by existing law." In re Grossinger, 268 B.R. 386, 390 (Bankr. S.D.N.Y. 2001).[4] Similarly, when a petitioning creditor and its attorneys know that the petitioning creditor fails to meet the eligibility requirements of 11 U.S.C. § 303(b) but nevertheless file an involuntary bankruptcy petition and attempt to defend the petition, such conduct violates Bankruptcy Rule 9011. In re Val W. Poterek & Sons, Inc., 169 B.R. 896, 909-910 (Bankr. N.D. Ill. 1994); Landon v. Hunt, 977 F.2d 829, 833 (3rd Cir. 1992) (affirming award of Rule 9011 sanctions on attorneys who filed and defended involuntary petition that was filed in bad faith by creditors whose claims were being disputed in litigation, and unequivocally not eligible petitioning creditors, the bankruptcy court found that the attorneys who filed the petition on their

---

[3] Because of the sufficient identity between Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 11, it is appropriate to refer to cases applying F.R.C.P. 11 within the context of a sanctions motion under Bankruptcy Rule 9011. In re Sanford, 403 B.R. 831, 841 n 12 (Bankr. D. Nev. 2009); see also In re Chisum, 847 F.2d 597, 599 (9th Cir. 1988).

[4] Although Bankruptcy section 303(i) provides a remedy to a debtor against petitioning creditors when an involuntary bankruptcy petition is dismissed, the Section 303(i) remedy does not exclude an imposition of sanctions under Bankruptcy Rule 9011(c) on the petitioning creditors' attorney for improperly filing an involuntary bankruptcy petition. In re Grossinger, 268 B.R. at 390.

Fox Rothschild LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

behalf "acted in bad faith and that their conduct amounted to the most flagrant abuse of process the court had ever witnessed."); see also <u>In re Kidwell</u>, 158 B.R. 203, 219 (Bankr. E.D. Cal. 1993) ("Signing a petition containing a false representation that the number of creditors is such that three petitioners are not required is plainly a signature in violation of Rule 9011 …."); <u>America's Servicing Co. v. Schwartz-Tallard</u>, 438 B.R. 313, 320 (D. Nev. 2010) (making a false representation in a filing is a violation of Rule 9011).

While Bankruptcy Rule 9011 applies only to documents that are filed with the court and not to oral representations standing alone (<u>Christian v. Mattel, Inc.</u>, 286 F.3d 1118, 1131 (9th Cir. 2001)), any conduct taken before the court in defense of a document filed in violation of Bankruptcy Rule 9011 falls within the "later advocating" language of Bankruptcy Rule 9011 and therefore sanctions can be imposed for such conduct. <u>In re Blue Pine Group, Inc.</u>, __ B.R. __, 2010 WL 6493697 at * 5 (Bankr. D. Nev., Oct. 7, 2010) (Markell, J.). As recognized in <u>In re Blue Pine Group, Inc.</u>, this "later advocating" rule applies particularly where the document that violated Rule 9011 was a bankruptcy petition that should never have been filed in the first place. <u>Id.</u> at * 5, 7-8. In such a case, sanctionable conduct under Rule 9011 is comprised of "all actions related to the existence of the case and … 'later advocating' the propriety of the initial filing." <u>Id</u>.

### (1) **MDOR and its Attorneys Have Violated Bankruptcy Rule 9011 Because its Purported Tax Claim is Contingent and the Subject of a Bona Fide Dispute as to Liability and Amount; MDOR is Using the Involuntary Petitioner for an Improper Purpose.**

By filing the involuntary petition, MDOR has unequivocally violated Bankruptcy Rule 9011 because it and its attorneys know that its purported tax claim, upon which it represents to be an eligible petitioning creditor, is contingent and is the subject of bona fide dispute. Moreover, at the April 22, 2011, hearing before this Court, MDOR's attorneys attempted to defend the existence of this case and therefore perpetuate the involuntary bankruptcy petition

VG1 83708v2 04/27/11                                                9

that it had no factual or legal right to file in the first place. Thus, Bankruptcy Rule 9011 sanctions are mandatory.

By filing the involuntary petition, and later defending it, MDOR, Dan Bucks, Mr. Butler, Mr. Jones, the law firms of Brown McCarroll, L.P. and Lionel Sawyer & Collins have all violated Bankruptcy Rule 9011. By signing and filing the involuntary petition, MDOR and its attorneys alleged that MDOR was an eligible petitioning creditor. To be an eligible petitioning creditor, MDOR's claim against Mr. Blixseth cannot be contingent, nor can it be the subject of a bona fide dispute as to liability or amount. 11 U.S.C. § 303(b)(1). As discussed above in the Factual Background section, MDOR's purported tax claim of $219,258 satisfies none of these requirements. MDOR's purported $219,258 tax claim is contingent upon the resolution of the remaining issues in the STAB Complaint. Mr. Blixseth made this clear in the STAB Complaint. It is an unremarkable proposition that until a taxpayer's income for a certain year is determined, the taxpayer's resulting income tax liability cannot be determined.

Based on the STAB Complaint alone, MDOR unilaterally and wholly outside of the STAB proceedings determined what it believed to be the resulting tax liability for the improper environmental deduction. If MDOR believed that Mr. Blixseth's concession regarding the environmental deduction penalty as a matter of law resulted in a tax liability of $219,258, then MDOR's remedy would have been to file a motion for partial summary judgment on that issue in the STAB proceedings and obtain a judgment for that amount. It did no such thing. Moreover, MDOR gave Mr. Blixseth no prior notice that it would be unilaterally assessing him for $219,258, notwithstanding the STAB proceedings (which are still in the pleading stage). Instead, MDOR decided to ambush Mr. Blixseth with an involuntary bankruptcy petition as part of a much larger scheme aimed at collecting on its disputed $59 million tax claim. As detailed in Section 3.B.1 below, MDOR's improper (nefarious) purpose is to gain a tactical advantage over Mr. Blixseth, by short-cutting the STAB proceedings, removing Mr. Blixseth from his ability to control, prosecute and fund the STAB litigation, and having a bankruptcy trustee appointed with no resources or incentive to prosecute to STAB proceedings, thus ensuring that MDOR could

1  skip over the STAB litigation and proceed directly to collection of an otherwise disputed $59
2  million tax claim.  This is textbook abuse of the bankruptcy process and is unequivocally a
3  violation of Bankruptcy Rule 9011.

4      MDOR's improper purpose in violation of Rule 9011 is set forth below and incorporated
5  by reference in the argument in this Section.

6      **C.**    **Sanctions Are Permissible Under 11 U.S.C. § 105(a) for Bad Faith Conduct**

7      As this Court noted in In re Sanford, "[a]ttorney compliance with Rule 9011 is assessed
8  through an objective standard."  In re Sanford, 403 B.R. 831, 841 (Bankr. D. Nev. 2009) (citing
9  Smyth v. City of Oakland (In re Brooks–Hamilton), 329 B.R. 270, 283 (B.A.P. 9th Cir. 2005)).
10 Thus, the subjective bad faith of a party or its attorney does not usually fall into the equation in
11 determining whether Rule 9011 has been violated.  Id.  However, this Court has held that under
12 its inherent powers found in Bankruptcy section 105(a), a bankruptcy court may sanction an
13 attorney or party who filed a bankruptcy petition in bad faith.  Id. at 843-844.  As this Court
14 reasoned, "[w]hile Rule 9011 addresses the objective violation of the rules, it does not address
15 the subjective motivation that animated these actions.  But motive undeniably influences
16 sanctions—the clueless are not as culpable as the conniving, even if the actions are the same.  Put
17 another way, should the range of sanctions be expanded if the action taken was driven by
18 improper motives?  The answer is yes.  Bankruptcy courts have the inherent power to sanction
19 attorneys for egregious behavior that exceeds the scope of Fed. R. Bankr. P. 9011."  Id. At 843.

20     **(1)**    **Sanctions Under 11 U.S.C. § 105(a) Are Warranted on These Facts.**

21     As discussed herein, the motivations of MDOR and its attorneys are not consistent with
22 Bankruptcy section 303; i.e., to provide a venue for relief for all of Mr. Blixseth's legitimate and
23 bona fide creditors.  See In re St. Marie Development Corp. of Montana, Inc., 334 B.R. 663, 671
24 (Bankr. D. Mont. 2005) (indicative of bad faith is whether a petitioning creditor is using
25 bankruptcy as a means to protect its own interest rather than protecting against other creditors,
26 and thereby gain a disproportionate advantage).  Rather, all objective factors and the statements
27 of MDOR's representatives and its attorneys make it clear that they filed the involuntary
28

Fox Rothschild LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

bankruptcy petition to gain a litigation advantage over Mr. Blixseth in the most of nefarious ways so that it could by-pass the STAB proceedings and collect on the disputed $59 million tax claim that is the subject of the STAB proceedings. In re Wavelength, Inc., 61 B.R. 614, 619 (B.A.P. 9th Cir. 1986) (a bankruptcy petition is filed in bad faith if it used as a "substitute for customary collection procedures."); In re Westerleigh Development Corp., 141 B.R. 38, 41 (Bankr. S.D.N.Y. 1992) (involuntary petition cannot be used as an additional litigation "weapon" to resolve two-party disputes); In re WLB-RSK Venture, 296 B.R. 509, 515 (Bankr. C.D. Cal. 2003) (involuntary petition filed in bad faith when done to gone a litigation advantage after years of failed litigation by the petitioner); In re TRED Holdings, L.P., 2010 WL 3516171 **7-8 (Bankr. E.D. Tex., Sept. 3, 2010) (involuntary petition filed to gain litigation advantage is bad faith); see also In re Pacific Rollforming, LLC, 415 B.R. 750, 755 (Bankr. N.D. Cal. 2009) (involuntary petition dismissed where keeping alleged debtor would only serve to bleed the debtor of funds to continue its litigation against the petitioning creditors).

As affirmed by MDOR's attorney, Mr. Butler, at the April 22nd hearing, the sole purpose of the involuntary petition is for MDOR to get at assets in Desert Ranch LLLP to satisfy a $56 million tax claim against Mr. Blixseth, to which MDOR is not entitled. Putting the "cart before the horse," Mr. Butler represented to this Court that MDOR filed the involuntary petition in anticipation of collecting on its disputed $59 million tax claim through the mechanism of the Bankruptcy Code fraudulent transfer statutes. April 22 Hearing Transcript, 9:17-25; 10:6-12 (attached to the Omnibus Blixseth Declaration as Exhibit 16). MDOR is nothing more than an overzealous disputed creditor seeking to avoid the annoyance of litigating Mr. Blixseth's tax liability and instead proceed straight to collecting. April 22 Hearing Transcript, 10:14-15 ("From a collector's point of view, the liabilities' collectability was in danger."); 11:9-11 ("Our anxiety as to collectability increased dramatically. At that point in time, the involuntary was discussed."), 28:19-25 ("the main driving factor that I alluded to earlier is the fact that what you have at the heart of a creditor's concern is the transfer of assets, blatant transfer, knowing transfer -- into Nevada vehicles that are created for asset protection measures. Outside of

Fox Rothschild LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

1  Nevada you'll probably -- every attorney hates to hear that his client has a Nevada trust or a
2  Nevada company …."). It would nice for creditors if they could put an alleged debtor into
3  bankruptcy to avoid the nuisance of litigating liability and skip straight to collecting, but
4  Bankruptcy section 303(b) specifically prohibits this. If ever there was a Bankruptcy Rule 9011
5  violation for filing an involuntary bankruptcy petition, MDOR has committed it.

6  It cannot be emphasized enough that MDOR <u>has no right to look toward collection of a
7  $56 million tax claim</u> against Mr. Blixseth until such time as MDOR prevails in the STAB
8  proceedings, if it prevails at all. Yet this is precisely what Mr. Butler was representing to the
9  Court on April 22nd as being the purpose of the involuntary petition. This is also consistent with
10  Dan Bucks' statements to the Associated Press discussed above regarding MDOR's reason for
11  filing the involuntary petition. Truly this is putting the "cart before the horse." And this
12  inappropriate use of the Bankruptcy Code is precisely why Bankruptcy section 303(b) requires
13  petitioning creditors to have undisputed and non-contingent claims before they put an alleged
14  debtor into bankruptcy and why Section 303(i) provides for a rebuttable presumption of an award
15  of attorneys' fees and costs upon a non-consensual dismissal of an involuntary bankruptcy
16  petition. <u>Higgins v. Vortex Fishing Systems, Inc.</u>, 379 F.3d 701, 707 (9th Cir. 2004) ("This
17  presumption helps reinforce the idea that the filing of an involuntary petition should not be
18  lightly undertaken, and will serve to discourage inappropriate and frivolous filings.") (internal
19  quotations and citations omitted).

20  It is an unremarkable proposition that the filing of an involuntary bankruptcy petition
21  leaves a "permanent scar" on the alleged debtor's business reputation and can "chill the alleged
22  debtor's credit and sources of supply." <u>In re Advance Press & Litho, Inc.</u>, 46 B.R. 700, 702
23  (Bankr. D. Colo. 1984); <u>see also</u> <u>Higgins</u>, 279 F.3d at 707 (adopting reasoning of <u>In re Advance
24  Press & Litho, Inc.</u>, on this point). In other words, MDOR knows that simply filing an
25  involuntary bankruptcy petition can put a relatively high-profile[5] individual such as Mr. Blixseth

---

[5] As this Court itself recognized at the April 22nd hearing, this case has already garnered significant "notoriety." April 22, 2011 Hearing Transcript, 48:23. So much notoriety, in fact, that even a due process sensitive court, as this Court is, did not feel any further notice to potential

into such a catastrophic business position that his only choice for survival is to quickly "work out" a deal with MDOR based on MDOR's new found litigation leverage. This too is a classic abuse of the Bankruptcy Code. <u>In re Grossinger</u>, 268 B.R. 386, 388 (Bankr. S.D.N.Y. 2001) ("To use an involuntary filing as a tactic to "work it out" with one's alleged obligor is an abuse of the bankruptcy process and a violation of 11 U.S.C. § 303.").

Perhaps more nefariously, from an objective point of view it appears that MDOR's true intention with the involuntary petition is to have an order for relief entered so as to remove Mr. Blixseth from his ability to control and fund the STAB litigation. Once this occurs, MDOR knows that the result will only be beneficial to it as a bankruptcy trustee will be appointed who will have neither the resources, nor the incentive to litigate the STAB proceedings on Mr. Blixseth's behalf, thus ensuring MDOR success in that litigation. <u>Cf. In re Pacific Rollforming, LLC</u>, 415 B.R. at 755 (Bankr. N.D. Cal. 2009) (involuntary petition dismissed where keeping alleged debtor would only serve to bleed the debtor of funds to continue its litigation against the petitioning creditors). Even more perversely, MDOR knows that a bankruptcy trustee will have every monetary incentive to disburse to MDOR as much as money possible from Mr. Blixseth's estate under the compensation structure provided in 11 U.S.C. § 326(a). In light of what MDOR has stated publicly to the Associated Press, as well as Mr. Butler's justifications[6] for the petition that he made before this Court on April 22nd, the only reasonable inference to draw from MDOR's conduct is that it is using these bankruptcy proceedings to gain a nefarious litigation advantage over Mr. Blixseth. While all objective factors supported by MDOR's own statements

---

creditors was warranted given the degree of notoriety already achieved.

[6] In addition to what is discussed above about Mr. Butler's representations to the Court, Mr. Butler also represented to the Court that the purported need to invoke the bankruptcy process was to use the Bankruptcy Code fraudulent transfer (i.e., 11 U.S.C. §§ 544, 548) statutes to claw back transfers of Mr. Blixseth's marital assets into Desert Ranch LLLP immediately following his divorce in August of 2008. April 22 Hearing Transcript, 10:9-10. This is just another pretext. To the extent any fraudulent transfer cause of action against Desert Ranch LLLP could survive a Rule 12(b)(6) motion, then MDOR has a state law remedy under the applicable Uniform Fraudulent Transfer Act. Therefore there is no need to invoke the Bankruptcy Code assuming *arguendo* that MDOR even has eligibility to invoke the Bankruptcy Code against Mr. Blixseth, which it does not.

1  and the STAB filings demonstrate MDOR's bad faith intent, at the hearing May 18, 2011, Mr.
2  Blixseth will call Mr. Butler, Mr. Jones and any MDOR representative present in the courtroom
3  to testify as to what MDOR knew prior to filing the involuntary about the existence of Mr.
4  Blixseth's creditors, whether Mr. Blixseth was paying his debts as they came due, the location
5  and nature of assets held by Desert Ranch LLLP, the extent to which MDOR was familiar with
6  the trial and deposition testimony in AP-14, and how MDOR gained this knowledge.

Mr. Blixseth further intends to call these witnesses to establish the prepetition efforts of MDOR to put Mr. Blixseth into bankruptcy and the communications of its representatives and its attorneys with representatives of the Yellowstone Club Liquidating Trust, Edra D. Blixseth (including her bankruptcy trustee), the Yellowstone Club debtor entities, and CrossHarbor Capital Partners LLC (including its attorney Paul Moore).  Mr. Blixseth believes that he will elicit testimony from these witnesses which will demonstrate to this Court that MDOR's involuntary bankruptcy petition is part of a larger and orchestrated scheme by Mr. Blixseth's litigation adversaries in Montana to obliterate Mr. Blixseth's ability to continue his appellate challenges to the Yellowstone Club plan of reorganization (in which he has thus far been successful), his appeal of the judgment against him in AP-14, as well as other litigation matters involving the aforementioned parties.  At stake for these aforementioned parties in the litigation pending in Montana are hundreds of millions of dollars and they therefore have a huge incentive to see that Mr. Blixseth is removed from his ability to control his litigation as a defendant, an appellant, and a plaintiff.

MDOR cannot use this involuntary bankruptcy as a weapon to shortcut the STAB litigation and prematurely collect on its disputed claims therein.  Yet this is precisely what it has unashamedly admitted to doing.

Therefore, MDOR and its attorneys should be sanctioned for such a gross abuse of the bankruptcy process.

///

///

### D. Sanctions Are Required to Deter Future Conduct.

The "guiding principle for all sanctions" whether under Bankruptcy Rule 9011 or under Bankruptcy section 105(a) is deterrence. In re Sanford, 403 B.R. at 847. Here, MDOR and Mr. Butler appear undaunted in their effort to keep Mr. Blixseth in an involuntary bankruptcy despite the fact that the other petitioners have since departed. Indeed, at the April 22nd, hearing, Mr. Butler informed this Court that he was appearing on behalf of all three petitioning creditors to defend the venue in this case and prevent the petition from being dismissed. See April 22 Hearing Transcript, 4:12-17. This was a particularly egregious position for Mr. Butler to take because just days before, two of his clients (i.e., two of the three petitioning creditors) executed settlement agreements with Mr. Blixseth wherein they agreed to not participate any further in the bankruptcy proceedings and to not oppose Mr. Blixseth's efforts to dismiss the involuntary petition. See Omnibus Blixseth Declaration, ¶ 10; Exhibits 3 and 4. Undaunted by the settlements agreements that his own clients had made days before with Mr. Blixseth, Mr. Butler with impunity proceeded to advocate before this Court on behalf of those settling clients and against Mr. Blixseth in derogation of the agreements that they had reached with Mr. Blixseth. At a minimum, this conduct raises a host of questions about whether Mr. Butler violated his professional and ethical duties to his clients, the Court, and Mr. Blixseth.

What is clear, however, is that a strong deterrent is required to curtail Mr. Butler and MDOR's bad faith conduct against Mr. Blixseth because Mr. Butler has demonstrated no regard for the commitments that his own clients made to Mr. Blixseth, as such commitments are inconvenient to his other client, MDOR.

Perhaps most demonstrative of MDOR's unrelenting quest to oppress Mr. Blixseth through an involuntary petition, that it has no right to participate in, are the statements that Mr. Butler made to the Associate Press immediately following the April 22nd hearing. In response to concerns about the viability MDOR's involuntary petition in light of Mr. Blixseth settling California and Idaho's claims, Mr. Butler stated: "[W]e can still go out and try to find other creditors. And we will do that, I guarantee you." See Conant Declaration, at **Exhibit 1**

1  (emphasis added).[7] Mr. Butler made these remarks to the media despite the Court's agreement
2  with Mr. Blixseth's argument on the record at the April 22 hearing only minutes before that
3  MDOR is stuck with its choice of fellow petitioning creditors – even if they should later be
4  deemed ineligible or withdraw from the case (as has happened here) – and is not permitted to
5  solicit replacements.  April 22 Hearing Transcript, 48:19-49:1;49:15-50:7; 51:20-53:7.

6  Mr. Butler's own statements make it clear that significant and hefty monetary sanctions
7  are required to deter future wrongful conduct against Mr. Blixseth.

8  Mr. Blixseth submits to this Court that such sanctions should be comprised of the
9  following amounts:  (1) an amount of restitution to compensate Mr. Blixseth for the attorneys'
10 fees and costs that he has incurred in connection with defending against all aspects of the
11 involuntary petition (see In re Blue Pine Group, Inc., 2010 WL 6493697 at ** 5-6), with such an
12 amount to be determined after resolution of this Motion; and (2) an immediate monetary sanction
13 in an amount to be determined by this Court payable to Mr. Blixseth should another involuntary
14 petition be filed against him and MDOR is either a petitioner or was in any way involved in
15 orchestrating such a filing.  Mr. Blixseth suggests that a logical sanction amount for the latter
16 category would be $219,580.00.  Mr. Blixseth requests that any sanctions awarded pursuant to
17 this Motion be in addition to any relief he may be entitled to under Bankruptcy section 303(i).

18 Finally, Mr. Blixseth requests that the sanctions imposed pursuant to this Motion be
19 imposed joint and severally against MDOR, Dan Bucks (as signer of the Petitioner on behalf of
20 MDOR), Mr. Butler, Mr. Jones, the law firms of Brown McCarroll, L.P. and Lionel Sawyer &
21 Collins.  These offending parties and attorneys were involved in either signing and filing the
22 petition or defending the petition at the April 22, 2011, hearing.

---

[7] Mr. Blixseth asks this Court to take judicial notice of Mr. Butler's statements made to the Associated Press, which appeared on the Las Vegas Sun website on April 22, 2011.  See In re Sanford, 403 B.R. at 845, n 17.  These statements of Mr. Butler are admissions of a party opponent, pursuant to Federal Rule of Evidence 801(d)(2).

## CONCLUSION

MDOR and its attorneys filed the involuntary bankruptcy petition even though MDOR is unequivocally not an eligible petitioning creditor. MDOR unashamedly filed the petition to fast-track collection of $59 million tax claim, which is currently being disputed in the STAB proceedings. This is most certainly bad faith *per se*, and is also a violation of Bankruptcy Rule 9011. Beyond this, all objective appearances are that MDOR is using the bankruptcy process for an even more nefarious purpose: to deprive Mr. Blixseth of the ability to fund and control his dispute with MDOR in the STAB proceedings while at the same time having a bankruptcy trustee appointed who will have incentive to help MDOR collect on MDOR's disputed tax claim. The Bankruptcy Code was not intended to be used this way. Accordingly, MDOR, Dan Bucks, Mr. Butler, Mr. Jones, the law firms of Brown McCarroll, L.P. and Lionel Sawyer & Collins should all be held accountable for their abuse of the bankruptcy process under Bankruptcy Rule 9011.

DATED this 27th day of April 2011.

**FOX ROTHSCHILD LLP**

By  */s/ Brett A. Axelrod*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899

CHARLES D. AXELROD, ESQ.
California Bar No. 39507
**FOX ROTHSCHILD LLP**
1800 Century Park East
Suite 300
Los Angeles, California 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828

*Counsel for Timothy L. Blixseth*