BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone:  (702) 262-6899
Facsimile:   (702) 597-5503
Email: baxelrod@foxrothschild.com

CHARLES D. AXELROD, ESQ.
California Bar No. 39507
**FOX ROTHSCHILD LLP**
1800 Century Park East, Suite 300
Los Angeles, California 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
*Counsel for Timothy L. Blixseth*

| Electronically filed on April 2, 2013 |
| --- |

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

TIMOTHY L. BLIXSETH,

Alleged Debtor.

Case No. BK-S-11-15010-BAM

Chapter 7 (Involuntary)

**AMENDED MOTION TO DISMISS INVOLUNTARY CASE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing Date:    June 13, 2013
Hearing Time:    9:30 a.m.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

*VG1 162980v1 04/02/13*

Alleged debtor, Timothy L. Blixseth ("TLB" or "Mr. Blixseth"), by and through his counsel, the law firm of Fox Rothschild LLP, hereby submits this Amended Motion to Dismiss ("Motion to Dismiss") seeking entry of an order by the Court dismissing the above-captioned involuntary bankruptcy case.  This Motion to Dismiss is made and based upon the following points and authorities, the Declaration of Timothy L. Blixseth with supporting exhibits filed in support hereof (the "Blixseth Declaration"), the Declaration of Brett Axelrod filed in support hereof (the "Axelrod Declaration"), the pleadings and papers on file with the Court in this matter, alternate direct testimony by declaration pursuant to Local Rule 9017 for all witnesses identified on Mr. Blixseth's Final Witness List, all declarations and excerpts of transcripts and exhibits to be used at the evidentiary hearing, and any oral argument the Court may entertain at the hearing at the date and time set forth above.

## 1.    **INTRODUCTION**

At the time the involuntary petition was filed, Mr. Blixseth had no less than fifteen (15) undisputed creditors whose aggregated claims were at least $1.5 million.  Therefore, under 11 U.S.C. § 303(b), at least three creditors holding undisputed claims were required to file the involuntary petition in order for the petition to be valid.  That did not happen here.  The State of Montana's purported tax claim at the time the involuntary petition was filed, and continuing at all times thereafter, has been the subject of a bona fide dispute as to amount.  The other two petitioners, the State of Idaho and State of California, also held disputed claims as to amount, and since have withdrawn *nunc pro tunc* (or retroactively) from the involuntary petition as a result of their claims being settled.  Simply stated, the standing requirements of 11 U.S.C. § 303(b) have not been satisfied and therefore this involuntary case should be dismissed.

## 2.    **FACTUAL BACKGROUND**

### A.    **Bona Fide Disputes with MDOR.**

#### (1)    **Overview**

MDOR is currently in litigation with Mr. Blixseth before the Montana State Tax Appeals Board ("STAB").  The proceedings before STAB are statutorily defined administrative remedies created by the State of Montana to allow MDOR and taxpayers to resolve tax disputes.  *See*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Montana Code Annotated § 15-2-302 *et seq*. The Montana legislature has in fact codified a "taxpayer's bill of rights" which entitles Montana's taxpayer, amongst other things, to: (1) "be treated by the department in a similar manner as all similarly situated taxpayers regarding the administration and collection of taxes …"; and (2) avail itself of the legislatively prescribed administrative and judicial remedies to resolve taxation disputes with MDOR.  M.C.A. § 15-1-222(3), (9).

It is within this framework and under this statutory "bill of rights" that Mr. Blixseth was attempting to resolve MDOR's disputed tax claims against him when MDOR filed the involuntary bankruptcy petition.

**(2)    Environmental Penalty Dispute (Audit Issue #4)**

Amongst the disputed claims that Mr. Blixseth was challenging in the STAB proceedings when MDOR filed the involuntary petition was (and continues to be) MDOR's so-called Audit Issue #4.  With respect to Audit Issue #4, MDOR claims that Yellowstone Development LLC took an improper deduction on its tax returns for an environmental penalty that it paid to the U.S. Government.  Because Yellowstone Development LLC is a pass-through entity to Mr. Blixseth for tax purposes, MDOR claims that Mr. Blixseth owes income taxes to MDOR for improperly taking a deduction for the environmental penalty.  Mr. Blixseth has conceded that it was improper to take a tax deduction for the environmental penalty paid by Yellowstone Development LLC.  However, and this is where MDOR errs, Mr. Blixseth has <u>not</u> conceded and has specifically contested before the STAB and MDOR the resulting <u>amount</u> owed for that improper deduction.  Nevertheless, MDOR claims on its involuntary petition that Mr. Blixseth undisputedly owes $219,258 in taxes, penalties and interest for this improper deduction.  As discussed in detail below, MDOR's justification for Mr. Blixseth "undisputedly" owing $219,258 is erroneous and was concocted in bad faith, and in contravention of the STAB pleadings and stipulations in that litigation, all for the purpose of creating an undisputed claim that it could then attempt to use as a pretext to file an involuntary petition against Mr. Blixseth.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

### (3)    Additional Procedural History Regarding MDOR Tax Disputes

MDOR claims that Mr. Blixseth owes MDOR $59 million in taxes, which includes the amounts allegedly owed under Audit Issue #4.  Mr. Blixseth disputes that he owes this amount. Specifically, on July 27, 2009, MDOR sent a letter to Mr. Blixseth informing him that it was making certain adjustments to income tax, penalties and interest that Mr. Blixseth allegedly owed for audit years 2002 through 2006.  See Blixseth Declaration, Ex.1, pp. 21-32.  MDOR informed Mr. Blixseth by this letter that its adjustments resulted in Mr. Blixseth owing $56,869,979.  Id. at p. 21.  On March 3, 2010, MDOR sent another letter to Mr. Blixseth informing him that it was further adjusting the taxes, interest and penalties that Mr. Blixseth owed such that Mr. Blixseth owed MDOR $57,017,038.  See Blixseth Declaration, Ex.1, pp. 33-35.

By letter dated January 7, 2011, MDOR sent Mr. Blixseth yet another letter informing him that the then current amount allegedly due and owing to it for the 2002 through 2006 audit periods was $59,424,837.  See Blixseth Declaration, Ex. 1, p. 36-39.  However, with this letter, MDOR unilaterally asserted that because Mr. Blixseth did not contest that the environmental penalty deduction was improper, that its resulting calculation of the amount owed under Audit Issue #4 was undisputed and accordingly submitted a "Statement of Account" to Mr. Blixseth claiming that he owed $216,657.  Id. at 38-39.  Notably, in the Statement of Account, MDOR informed Mr. Blixseth that if he did not pay this $216,657 within 30 days, that the remedy available to MDOR was to issue a "warrant for distraint (judgment/tax lien)" against Mr. Blixseth.  Id.  There was no mention that MDOR could or would file an involuntary bankruptcy petition.  Id.

Having received MDOR's January 7, 2011 letter and enclosed Statement of Account and disputing the amount that MDOR claimed was owed, Mr. Blixseth timely objected to MDOR's claims under Mont. Admin. R. 42.2.510 and accordingly entered into a stipulation with MDOR on January 14, 2011 wherein MDOR recognized that Mr. Blixseth disputed all assessments for tax years 2002 through 2006 (which necessarily included Audit Issue #4 and the resulting Statement of Account).  See Blixseth Declaration, Ex. 1, p. 42-44, ¶ 2.  In the Stipulation, MDOR and Mr. Blixseth agreed to by-pass the mediation and formal dispute resolution procedures allowed under M.C.A. § 15-1-211 and proceed directly to litigating their dispute before STAB, if Mr. Blixseth so

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

elected in a timely manner. Id. at p. 43, ¶¶ 4-5. In the concluding paragraph of the Stipulation, MDOR and Mr. Blixseth agreed that if Mr. Blixseth did not timely appeal to STAB, then he would "forfeit his right to appeal or otherwise contest the Department's determination of the tax liabilities for the relevant years." Id. at p. 44, ¶ 7 (In paragraphs 1 and 5 of the Stipulation, MDOR acknowledged that the "relevant years" were 2002-2006, which necessarily included Audit Issue #4 pertaining to tax year 2004).

Unbeknownst to Mr. Blixseth, on the same day MDOR stipulated with him to resolve their disputes concerning all Audit Issues before STAB, MDOR's staff and counsel were exchanging internal emails in which they were discussing their plans to file an involuntary petition against Mr. Blixseth. See Axelrod Declaration, Ex. 1 (MDOR's produced documents Bates No. 04001195). Had Mr. Blixseth known of MDOR's true intentions, he would not have entered into the Stipulation as written but would have sought further protections for himself either in the negotiations leading up to the Stipulation or through other administrative and state law remedies to prevent from MDOR from invoking the bankruptcy process against him, a process that it has never invoked against any other individual. Instead, MDOR lulled Mr. Blixseth into believing that all their disputes would be resolved in due course through STAB litigation, when in fact MDOR had other designs for him.

On February 10, 2011, Mr. Blixseth timely appealed MDOR's assessments for all tax issues for years 2002 through 2006 by filing his Complaint with STAB. See Blixseth Declaration, Ex. 1, p. 2 (hereinafter "STAB Complaint"). In the STAB Complaint, Mr. Blixseth specifically challenged the amount of MDOR's assessment for Audit Issue #4. Mr. Blixseth alleged:

> The Taxpayer [Mr. Blixseth] does not dispute the fourth Audit Issue in the Notice of Deficiency ("Audit Issue 4"), the Department's finding that Yellowstone Development, LLC erroneously deducted a $1,800,000 civil penalty on its 2004 partnership return.
>
> Notwithstanding the Taxpayer's concession concerning the deductibility of the aforementioned civil penalty, the Taxpayer submits that the resulting Montana income tax liability, if any, cannot be properly determined prior to the full and final resolution of all of the audit issues.

See Blixseth Declaration, Ex. 1, ¶¶ 31- 32 (emphasis added).

Moreover, Mr. Blixseth further contested in the STAB Complaint that all of MDOR's alleged Audit Issue assessments against him were based on an improper entity pass-through

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

allocation and therefore the amounts claimed by MDOR (including the amounts claimed in Audit Issue #4) were improper.  See Blixseth Declaration, Ex. 1, ¶¶ 49-52.  Additionally, in the STAB Complaint, Mr. Blixseth alleged that "good cause" existed under Montana law, and specifically M.C.A. § 15-1-206, for MDOR to waive penalties and interest claimed by MDOR with respect to all Audit Issues.  See Blixseth Declaration, Ex. 1, ¶¶ 57-60.  With respect to Audit Issue # 4, of the $216,657 that MDOR was claiming, $67,674 consisted of interest and $22,726 consisted of late penalties.  See Blixseth Declaration, Ex. 1, pp. 38-39.  MDOR's own auditor, Spencer Marks, admitted that the $219k Claim (as defined below) was disputed because it included $92,701 in penalties and interest that Mr. Blixseth had a right to contest.  See Axelrod Declaration, Ex. 2, Marks Tr. 140:10-142:24; Ex. 3, Marks Declaration [Docket No. 75], ¶¶ 18-21.

In the STAB Complaint, Mr. Blixseth asserted twenty affirmative defenses to MDOR's tax claims against him, including Audit Issue #4.  See Blixseth Declaration, Ex. 1, pp. 14-20.  In response, MDOR filed a motion to strike those affirmative defenses.  See Blixseth Declaration, Ex.4.  On April 8, 2011, STAB denied MDOR's motion to strike, thereby recognizing the legal sufficiency of Mr. Blixseth to assert his affirmative defenses to all of MDOR's tax claims, including Audit Issue #4.  See Blixseth Declaration, Ex. 6.

On April 13, 2011, MDOR filed a "Notice of Bankruptcy Filing and Motion for Stay" with STAB wherein it admitted, "Mr. Blixseth's state tax liability was not finally adjudicated prior to the commencement of the involuntary bankruptcy proceedings …."  See Blixseth Declaration, Ex. 7, ¶ 15.  On June 23, 2011, MDOR filed its answer to Mr. Blixseth's STAB Complaint.  In its answer, MDOR denied all the material allegations in Mr. Blixseth's STAB Complaint concerning the above matters.  See Blixseth Declaration, Ex. 8, MDOR Answer ¶¶ 33, 59-61.

On January 23, 2012, STAB issued a scheduling order setting forth all pre-trial deadlines. Notably, STAB allowed the parties to file motions for summary judgment or summary adjudication on or before October 3, 2012.  See Blixseth Declaration, Ex. 2, STAB Scheduling Order ¶ 7. Although that scheduling order was superseded by a subsequent "joint scheduling order" approved by STAB wherein the motion for summary judgment and dispositive motions deadline was extended to April 19, 2013 (Exhibit 3 to Blixseth Declaration), MDOR has not availed itself of its

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1  ability to seek partial summary adjudication on what it purportedly believes to be undisputed legal

2  and factual issues regarding Audit Issue # 4.  See Blixseth Declaration, ¶ 11.

3  **C.    Bona Fide Dispute with California Franchise Tax Board.**

4       The California Franchise Tax Board ("FTB") asserted in the petition that Mr. Blixseth's tax

5  liability to FTB totaled $986,957.95.  See Petition [Docket No. 1].  Mr. Blixseth has always

6  disputed that he owed the amount asserted.  See Blixseth Declaration, ¶ 21.  After the filing of the

7  involuntary petition, Mr. Blixseth and FTB entered into that certain settlement agreement dated

8  April 18, 2011 (the "California Settlement Agreement"), whereby FTB stated the amount owed was

9  $992,300.99, including penalties and interest, and Mr. Blixseth asserted he is owed a substantial

10  refund from FTB in addition to other claims against FTB.  See Blixseth Declaration, Ex. 10.

11  Notably, in the California Settlement Agreement, FTB specifically acknowledged that Mr. Blixseth

12  disputed that he owed the amount FTB claimed in its involuntary petition.  See Blixseth

13  Declaration, Ex. 10, Recital B.  Acknowledging the existence of this dispute as true, FTB then made

14  the existence of that dispute the basis and consideration for entering into a settlement agreement

15  with Mr. Blixseth so that Mr. Blixseth would not assert any claims against FTB under 11 U.S.C. §

16  303(i).  See Blixseth Declaration, Ex. 10, ¶¶ 2, 7.  Under California law, the recitals in the

17  California Settlement Agreement acknowledging the dispute as to the amount Mr. Blixseth owed is

18  conclusive evidence of the existence of that dispute.  See Cal. Evid. Code § 622.  Further

19  evidencing that the amount that Mr. Blixseth owed to FTB was disputed, Mr. Blixseth expressly

20  reserved his rights to "any and all refunds and other claims owed to Blixseth by FTB."  Id. at ¶ 5.

21       Upon receipt of payment of the settled amount on April 20, 2011, FTB subsequently filed

22  with the Court a Notice of Submission of Withdrawal of Participation on Behalf of the California

23  Franchise Tax Board indicating FTB's withdrawal from participating in the involuntary case as a

24  petitioning creditor nunc pro tunc as of the date of initial filing.  See Docket No. 26.  Moreover, in

25  May of 2001, the FTB sent Mr. Blixseth a tax refund check for tax year 2007.  See Blixseth

26  Declaration, ¶ 21.

27       All of the foregoing validates Mr. Blixseth's position that the amount of the tax liability

28  asserted against him by FTB was in bona fide dispute at the time the involuntary petition was filed.

### B.    Bona Fide Dispute with State of Idaho.

In the involuntary petition, the Idaho State Tax Commission (the "Commission") asserted that Mr. Blixseth's tax liability to the Commission totaled $1,117,914.  See Petition [Docket No. 1]. Mr. Blixseth has always disputed that he owed the amount asserted.  Blixseth Declaration, ¶ 18. Subsequent to the filing of the involuntary petition, Mr. Blixseth and the Commission entered into that certain settlement agreement dated April 18, 2011 (the "Idaho Settlement Agreement"), whereby the Commission stated the amount owed was $1,124,772, including penalties and interest, but agreed to accept the sum of $925,000 "in complete settlement of all income taxes, penalty, and interest for" Mr. Blixseth's tax obligations for the tax years 2005, 2007 and 2008.  See Blixseth Declaration, Ex. 9.  Further, such agreement was deemed to be "final and conclusive" and provided that those tax years indicated "shall not be reopened by the Commission, nor shall any suit, action or proceeding for determination, assessment, collection, refund or credit or any other claim be brought by either party."  Id.  Consequently, on April 20, 2011, the Commission filed a Notice of Withdrawal with the Court indicating the Commission's withdrawal from participating in the involuntary case as a petitioning creditor *nunc pro tunc* as of the date of initial filing.  See Docket No. 20.

As evidenced by the Idaho Settlement Agreement, the Commission willingly and readily compromised its claim against Mr. Blixseth to an amount almost $200,000 less than the amount the Commission claimed it was owed on the involuntary petition.  Moreover, the Commission agreed to accept the settlement amount in full and final satisfaction of its claim and upon receipt then filed a notice indicating its withdrawal from this case.  All of the foregoing validates Mr. Blixseth's position that the tax liabilities asserted against him by the Commission were in bona fide dispute at the time the involuntary petition was filed.  See Blixseth Declaration, ¶ 18.

### 3.    LEGAL ARGUMENT

### A.    Legal Standard

Federal Rule of Bankruptcy Procedure 1011(b) allows an alleged debtor to contest an involuntary petition through the manner set forth in Federal Rule of Civil Procedure 12.  Rule 12(b)(1) sets forth the defense of lack of subject matter jurisdiction as a ground for complete

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

dismissal of an involuntary petition.  Eligibility of a petitioning creditor goes to the standing of the creditor to have filed the petition in the first place.  In re Seko Inv., Inc., 156 F.3d 1005, 1007, 1008 (9th Cir. 1998) ("A creditor does not have standing to file an involuntary Chapter 7 petition if its claim is 'contingent as to liability or the subject of a bona fide dispute.'") (quoting Section 303(b) prior to BAPCPA amendments); In re ELRS Loss Mitigation, LLC, 325 B.R. 604, 624 (Bankr. N.D. Okla. 2005) ("Initially, the court must determine that the creditors who brought the petition are eligible to do so. If the petitioning creditors lack standing, the bankruptcy court lacks jurisdiction over the case, and the case must be dismissed."); In re Rosenberg, 414 B.R. 826, 840 (Bankr. S.D. Fla. 2009) (same); In re Miller, 444 B.R. 446, 463 (Bankr. N.D. Okla. 2011) (same), rev'd in part on other grounds, 2012 WL 1029534 (N.D. Okla. Mar 26, 2012); In re Elsa Designs, Ltd., 155 B.R. 859, 862-63 (Bankr. S.D.N.Y. 1993) (discussing how challenge to eligibility of petitioning creditors may be raised in motion to dismiss challenging court's jurisdiction); In re Bank of America, N.A., 2011 WL 2493056, 5 (Bankr. D. Colo. 2011); In re Green Hills Development Co., LLC, 445 B.R. 647, 656 (Bankr. S.D. Miss 2011).  Standing of a plaintiff goes to a court's subject matter jurisdiction.  Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Aydin Corp. v. Union of India, 940 F.2d 527, 527-529 (9th Cir. 1991); Hillblom v. United States, 896 F.2d 426, 430-31 (9th Cir. 1990).

Mr. Blixseth moves this Court to dismiss the involuntary petition because the petitioning creditors lacked standing to file the petition and therefore this Court lacks subject matter jurisdiction.  If this Court does not grant this Motion to Dismiss, Mr. Blixseth will then file an answer as prescribed by Federal Rule of Civil Procedure 12(a)(4) contesting the involuntary petition under Section 303(h) and asserting appropriate affirmative defenses.  Fed. R. Bankr. P. 1011(b) (incorporating the procedures of Fed. R. Civ. P. 12 into contested involuntary petition proceedings).

**B.    There Are No Eligible Petitioning Creditors**

11 U.S.C. § 303(b) establishes the procedure for commencing an involuntary bankruptcy case.  As relevant here, section 303(b) provides:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability <u>or the subject of a bona fide dispute as to liability or amount</u> ... if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.... (emphasis added)

The petitioning creditors bear the burden of showing that no bona fide dispute exists concerning their alleged claims, either as to liability or amount. <u>In re Vortex Fishing Systems, Inc.</u>, 277 F.3d 1057, 1064 (9th Cir. 2002). In fact, the petitioning creditors bear the burden of establishing all the requirements of section 303(b). <u>In re C&C Jewelry Mfg., Inc.</u>, 2001 WL 36340326, 6 (B.A.P. 9th Cir. 2009).

### (1)    What Constitutes a Bona Fide Dispute?

This Court (sitting on the Bankruptcy Appellate Panel for the Ninth Circuit) has elaborated on what constitutes a bona fide dispute after considering the Ninth Circuit's brief discussion of the term in <u>In re Vortex</u>. Specifically, in <u>In re Marciano</u>, this Court, albeit in dissent, discussed how determining whether a "bona fide dispute" exists is resolved by "focusing on genuineness rather than on subjective good faith" of the dispute in issue. <u>In re Marciano</u>, 459 B.R. 27, 60 (B.A.P. 9th Cir. 2011) (Markell, J.)(in dissent) (citing <u>In re Vortex</u>). [1] The Ninth Circuit in <u>In re Vortex</u> discussed how a bona fide dispute exists if there is "an objective basis for either a factual or a legal dispute as to the validity of the debt." <u>In re Vortex</u>, 277 F.3d at 1064 (quoting <u>In re Busick</u>, 831 F.2d 745, 750 (7th Cir. 1987)). In determining whether an objective basis for a dispute exists, "[t]he court need not 'evaluate the potential outcome of a dispute' but must 'determine whether there are facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much.'" <u>In re C&C Jewelry Mfg., Inc.</u>, 2001 WL 36340326, 6 (quoting <u>Vortex</u>, 277 F.3d at 1064). Most recently, the Ninth Circuit in <u>In re Marciano</u> determined that a claim was undisputed if the "debtor's immediate liability cannot be disputed under governing state law …" <u>In</u>

----

[1] Mr. Blixseth recognizes that a divided panel of the Ninth Circuit Court of Appeals recently affirmed the majority BAP panel in <u>In re Marciano</u>. <u>In re Marciano</u>, 708 F.3d 1123 (9th Cir. 2013). However, the narrow issue affirmed by the Court of Appeals does not in any way overrule or contradict this Court's general discussion of what constitutes a "bona fide dispute" in its dissenting opinion in <u>Marciano</u>.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

re Marciano, 708 F.3d 1123, 1127 (9th Cir. 2013).  The logical negative inference from this rule is that if a debtor's claim can be immediately disputed under "governing state law" then the claim is disputed for purposes of 11 U.S.C. § 303(b).

This Court in Marciano explained that determining whether an "objective" basis for a bona dispute exists within the In re Vortex framework does not require the courts to actually "resolve the merits of the bona fide dispute, but simply determine whether one exists."  In re Marciano, 459 B.R. at 61 (quoting Platinum Fin. Serv. Corp. v. Byrd (In re Byrd), 357 F.3d 433, 437 (4th Cir. 2004)).

Further, as this Court noted, "[w]hile the existence of a genuine issue of fact or a defensible legal argument might be some evidence of subjective good faith [which is not relevant], the two are not equivalent, and the existence of factual or legal issues just as easily could support an objective determination that the claim is subject to bona fide dispute."  Id. at 62.

> **(2)     To Be Eligible to File an Involuntary Petition, a Petitioning Creditor's Claim Must be Undisputed as to Liability and Amount**

In prior pleadings, MDOR appears to have been operating under a misunderstanding of current law.  In particular, MDOR justified its eligibility as a petitioning creditor on the basis that Mr. Blixseth had conceded the substance of Audit Issue #4, even though the amount of liability remained to be litigated before STAB.  See MDOR Brief at Docket No. 73, at  p. 8:19-27.  In taking this position MDOR improperly places reliance on portions of the pre-BAPCPA cases of In re Seko Investment, Inc., 156 F.3d 1005 (9th Cir. 1998) and In re Focus Media, Inc., 378 F.3d 916, 926 (9th Cir. 2004), which have been effectively overruled by the BAPCPA changes.  In analyzing the effect of the BAPCPA changes on the holdings from Seko and Focus Media, one court explained:

> In Focus [sic], following In re Seko Investment, Inc., 156 F.3d 1005 (9th Cir. 1998), provides that a "dispute as to the amount of the claim gives rise to a bona fide dispute only when (1) it does not arise from a wholly separate transaction, *and* (2) 'netting out the claims of debtors' could take the petitioning creditors below the amount threshold of § 303."
>
> The BAPCPA amendments of 2005 added to § 303 a provision that a claim would be excluded if subject to a bona fide dispute as to liability or amount.  This overrules Seko and In Focus.  If the In Focus rule were to remain in effect, the "and amount" language would be superfluous, since under In Focus the only dispute as to amount is a dispute over the entire claim, or at least a big enough dispute that netting out would take the claim below the monetary threshold.  It is a basic canon of statutory

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

construction that language be given its full effect.  See e.g., U.S. v. Church of Scientology Western U.S., 973 F.2d 715, 717 (9th Cir. 1992); U.S. v. Allen, 341 F.3d 870, 878 (9th Cir. 2003).  That would not occur if In Focus is applied.  Because the debt of Hilton Oil Company is subject to a bona fide dispute as to amount, Hilton Oil Company is not a valid petitioning creditor.

In re Excavation, Etc., LLC, 2009 WL 1871682, *2 (Bankr. D. Or. 2009) (emphasis in original).

Similarly, another court also emphasized that part of the In re Focus Media decision is no longer applicable based on BAPCPA:

> Prior to the amendment, a dispute limited to the amount was not a "bona fide dispute" as to the entire claim, at least under § 303(b)(1).  E.g., In re Focus Media, Inc., 378 F.3d 916, 926 (9th Cir. 2004) ("a dispute as to the amount of the claim gives rise to a bona fide dispute only when (1) it does not arise from a wholly separate transaction and (2) netting out the claims of the debtors could take the petitioning creditors below the amount threshold of § 303").  The 2005 amendment presumably eliminated the second part of the test.  As a result of the amendment, any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a bona fide dispute.  Id.

In re Euro-American Lodging Corp., 357 B.R. 700, 712 n. 8 (Bankr. S.D.N.Y. 2007) (citations omitted); Reg'l Anesthesia Assocs. PC v. PHN Physician Serv., Inc. (In re Reg'l Anesthesia Assocs. PC), 360 B.R. 466, 470 (Bankr. W.D. Penn. 2007); see also In re C&C Jewelry Mfg., Inc., 2001 WL 36340326, 6 (citing In re Dairies Inc., 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007) (rejecting petitioning creditors' argument that while some amount of its claim may be in dispute, the 11 U.S.C. § 303(b) threshold amount was not)).

Prior to the BAPCPA amendments to Bankruptcy Code section 303(b)(1), the Ninth Circuit limited its analysis under section 303(b) to the presence of a "bona fide dispute" in the aggregate of the undisputed portion of the petitioning creditor's claim.  The focus at that time was that, so long as the claims in the aggregate that were undisputed totaled the amounts required under section 303(b), a petitioning creditor could not be disqualified because of the existence of a dispute as to some additional potential liability.  In re Focus Media, 378 F.3d at 926 ("a dispute as to the amount of the claim gives rise to a bona fide dispute only when (1) it does not arise from a wholly separate transaction and (2) netting out the claims of the debtors could take the petitioning creditors below the amount threshold of 11 U.S.C. § 303").

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

BAPCPA changed this analysis by adding the phrase "as to liability or amount" to Bankruptcy Code section 303(b)(1). Bankruptcy courts have made it clear that, as a result of this additional language to section 303(b)(1), an eligible petitioning creditor's claim must not be subject to a bona fide dispute as to either liability <u>or</u> amount. <u>In re Vortex</u>, 277 F.3d 1057; <u>In re Rosenberg</u>, 414 B.R. 826, 845-46 (Bankr. S.D. Fla. 2009) ("the primary purpose of disqualifying a creditor whose claim is subject to a bona fide dispute from filing an involuntary petition is to prevent such creditors from using an involuntary petitions as a club to coerce the debtor to satisfy judgments when substantial questions remain concerning the debtor's liability"); <u>In re Euro-American Lodging Corp.</u>, 357 B.R. at 712 n. 8 (BAPCPA amendment "presumably" eliminated second part of the old test when dispute as to the amount of claim gives rise to bona fide dispute); <u>In re C&C Jewelry Mfg., Inc.</u>, 2001 WL 36340326, 6 (citing <u>In re Dairies Inc.</u>, 372 B.R. at 634 (rejecting petitioning creditors' argument that while some amount of its claim may be in dispute, 11 U.S.C. § 303(b) threshold amount was not)).

In short, it is simply not sufficient for Mr. Blixseth to be undisputedly liable to any of the petitioning creditors for them to be eligible creditors under section 303(b); <u>the amount</u> of Mr. Blixseth's ultimate liability must also be objectively undisputed. As discussed herein, the amount of Mr. Blixseth's liability to all of the original petitioning creditors was objectively disputed at the time the involuntary petition was filed.

### (3) The Claims of all Three Petitioning Creditors Were and Are Objectively Disputed as to Amount

For the involuntary petition to be valid, it must have been filed by three petitioning creditors whose claims are undisputed as to liability or amount. 11 U.S.C. § 303(b)(1).[2]

Applying the "objective" standard set forth by this Court in <u>Marciano</u> and <u>Vortex</u> leads to the conclusion that a bona fide disputes exists with respect to the amounts of any and all of the three petitioning creditors' claims.

---

[2] 11 U.S.C. § 303(b)(2) is not applicable because at the time the petition was filed, Mr. Blixseth had more than 12 undisputed creditors whose claims exceeded $14,425. Blixseth Declaration, ¶ 22.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(a)    **Summary of Disputed Nature of Audit Issue # 4 and MDOR's Allegedly Eligible Claim for $219,258**

MDOR argues that it was an eligible petitioning creditor under 11 U.S.C. § 303(b) based upon an allegedly undisputed tax claim for Mr. Blixseth in the amount of $219,258 (hereinafter "$219k Claim").  As explained above, MDOR's $219k Claim arises out of what MDOR has asserted Mr. Blixseth owes in accordance with Audit Issue # 4.

However, based simply on the procedural history described above, the amount that Mr. Blixseth owes under Audit Issue #4 was and is the subject of a bona dispute because there objectively exists genuine factual and legal issues that must be resolved before the ultimate amount that Mr. Blixseth owes to MDOR can be determined.  The following summary from the facts described above outlines how the amount that Mr. Blixseth owed under Audit Issue #4 was the subject of a bona fide dispute when MDOR filed the involuntary petition and that MDOR knew or recklessly overlooked that it was subject of a bona fide dispute as to amount when it filed the involuntary petition.

1.    Mr. Blixseth timely challenged MDOR's Statement of Account under Montana law regarding the $219k Claim, as evidenced in the January 14, 2011 Stipulation.  See generally supra Section 1.A.(3); Blixseth Declaration, Ex. 1, p. 42-44, ¶ 2.

2.    In entering into the January 14, 2011 Stipulation, MDOR allowed Mr. Blixseth to rely on that Stipulation and MDOR's acknowledgement therein that Audit Issue # 4 was disputed.  Mr. Blixseth relied (to his detriment if MDOR's position in this case were to prevail) on that Stipulation and acknowledgement in moving forward with his administrative and statutory remedies before STAB in contesting MDOR's tax claims, including Audit Issue # 4.  See generally supra Section 1.A.(3) and evidence cited therein.  Most nefariously, on the very same day it entered into the Stipulation with Mr. Blixseth, and without disclosure to him, MDOR was intending to file an involuntary petition against Mr. Blixseth concerning the very same claims that it had just

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

stipulated to litigating before STAB. MDOR should now be equitably estopped from claiming Audit Issue # 4 is undisputed.[3]

3.     MDOR acknowledged in the January 14, 2011 Stipulation that Mr. Blixseth challenged all of MDOR's assessment changes for tax years 2002 through 2006, which necessarily included Audit Issue # 4 relating to the 2004 tax year. See generally supra Section 1.A.(3) and evidence cited therein.

4.     MDOR acknowledged in the January 14, 2011 Stipulation that only if Mr. Blixseth failed to timely appeal MDOR's assessments to STAB would Mr. Blixseth then forfeit his right to challenge MDOR's assessments, including his challenge to Audit Issue #4. See generally supra Section 1.A.(3) and evidence cited therein.

5.     On February 10, 2011, Mr. Blixseth timely challenged MDOR's assessment by filing his STAB Complaint and directly putting the amount he owed under Audit Issue # 4 at issue based on several discrete defects in how MDOR calculated the alleged amount owed. Those discrete defects being:

(i)     The amount owed under Audit Issue # 4 could not be determined until all other income tax liability issues were fully and finally resolved: in other words until a complete and final understanding of Mr. Blixseth's income and expenses were determined for 2002 through 2006, MDOR could not simply parse out as undisputed taxes allegedly owed in 2004 because a final determination of years 2002 through 2006 would necessarily impact any loss carry-overs, adjustments, setoffs, refunds or the like for 2004;

(ii)     The amount owed under Audit Issue # 4 could not be determined until the appropriate pass-through entity allocation was determined, which allocation necessarily impacted Audit Issue # 4;

(iii)     The amount owed under Audit Issue #4 consisted of interest and penalties for which Mr. Blixseth had a statutory right to seek a waiver under M.C.A. § 15-1-206. See generally supra Section 1.A.(3) and evidence cited therein.

---

[3] "There are four basic elements to the defense of equitable estoppel: (1) the party to be estopped must know the facts; (2) the party to be estopped must either intend that its conduct will be acted upon or act in a manner that the party asserting estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the conduct to its injury." In re Associated Vintage Group, Inc., 283 B.R. 549, 567 (B.A.P. 9th Cir. 2002).

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

6.      STAB denied MDOR's motion to strike Mr. Blixseth's affirmative defenses, thereby objectively establishing the legal sufficiency of his defenses to all of MDOR's tax claims against him, including Audit Issue #4.  See generally supra Section 1.A.(3) and evidence cited therein.

7.      After it filed the involuntary petition, MDOR admitted to the STAB that Mr. Blixseth's state tax liability was not finally adjudicated prior to the commencement of the involuntary bankruptcy proceedings …."  See generally supra Section 1.A.(3) and evidence cited therein.

8.      Since commencement of the STAB proceedings, MDOR has not sought partial summary adjudication in its favor on any aspect of the STAB Complaint, let alone Audit Issue #4 despite ample time and ability to do so.  Nor has MDOR filed any form of motion with STAB claiming that Mr. Blixseth's defenses and objections to the amount owed under Audit Issue #4 were frivolous or lacking in merit.  The implication of MDOR failing to do either the latter or the former before STAB leads to the objective conclusion that genuine legal and factual issues exist before the amount of Mr. Blixseth's liability under Audit Issue #4 can be determined.  See generally supra Section 1.A.(3) and evidence cited therein.

Moreover, the very components of the $219k Claim are plainly disputed in several respects. The $219k Claim includes a substantial component (at least $92,701—over forty percent (40%)) for penalties and interest, which Mr. Blixseth has asked the STAB to waive in connection with the STAB Complaint.  Even where the principal amount of a claim is undisputed, a dispute over additional related charges such as attorney's fees and expense will render the entire claim disputed as to amount for purposes of section 303(b).  See In re Hentges, 351 B.R. 758 (Bankr. N.D. Okla. 2006).  MDOR's own auditor, Spencer Marks, admits that the penalties and interest component of the $219k Claim is disputed.  See Axelrod Declaration, Ex. 2, Marks Tr. 140:10-142:24; Ex. 3, Marks Declaration [Docket No. 75], ¶¶ 18-21.  In addition, Mr. Blixseth also disputed the amount of the $219k Claim on the grounds that his liability was affected by applicable community property law, see Blixseth Declaration, Ex. 1 (STAB Complaint Affirmative Defense No. 3), as well as the apportionment factor used by MDOR, see id. (STAB Complaint Count No. 9).  Therefore, what is

truly undisputable is that the amount of MDOR's claim was in dispute and therefore ineligible to support the filing of the involuntary petition.

Finally, under Montana law, MDOR's statutory prescribed method for collecting delinquent taxes is through issuing a "warrant for distraint" and then executing on that warrant through traditional judgment enforcement procedures.  M.C.A. §§ 15-1-701, 702, 706.  However, under M.C.A. § 15-1-705(2), if a taxpayer disagrees with MDOR's tax assessment, and timely appeals to STAB, MDOR may not execute on a warrant for distraint until the STAB appeal is resolved. M.C.A. § 15-1-705(2).  MDOR never issued a warrant for distraint against Mr. Blixseth, and even if it did, the Stipulation and Mr. Blixseth's timely appeal to STAB would have prevented MDOR from enforcing the warrant for distraint until that appeal was resolved.  Thus, MDOR should not be permitted to assert that its $219k claim is "undisputed" for purposes of collecting on its $219k Claim through these proceedings when Montana law prohibits it from enforcing its claim through traditional judgment enforcement mechanisms until the STAB appeal is resolved.[4]

In summary, using this Court's analysis in <u>Marciano</u> and given the totality of all aforementioned issues that were the subject of pending litigation in the STAB proceedings when MDOR filed the involuntary petition and which remain outstanding to this day, objectively demonstrate the genuineness of the dispute concerning the amount that Mr. Blixseth allegedly owes under Audit Issue #4. Indeed, the disputed nature of the claim is particularly apparent in light of the Ninth Circuit's recent discussion in Marciano finding that a claim can be disputed if it the debtor had an immediate right to dispute the claim under "governing state law" and that is precisely what Mr. Blixseth's did when he and MDOR stipulated to contesting Audit Issue #4 before STAB

---

[4] Mr. Blixseth recognizes that M.C.A. § 15-1-709 provides: "The use of the warrant for distraint provided for in 15-1-701 through 15-1-708 is not exclusive, and the department may use any other remedy provided by law for the collection of tax debts."  However, MDOR use of involuntary bankruptcy proceedings in the absence of MDOR undertaking any other effort available to it under Montana law to collect on an alleged delinquent debt is not an "other remedy provided by law" because filing an involuntary petition can only be used as a "measure of last resort …." <u>Higgins v. Vortex Fishing Systems, Inc.</u>, 379 F.3d 701, 707 (9th Cir. 2004).  MDOR unfortunately used these proceedings as a measure of first resort and that is not a remedy allowed by law.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

through the statutorily prescribed administrative remedies under Montana law.  In re Marciano, 708 F.3d at 1127.

### (b)    Summary of Bona Fide Dispute Concerning the Amounts Owed to Idaho and California

As set forth above, the claims of Idaho and California also were disputed when the involuntary petition was filed.

As to Idaho, the disputed nature of its claim objectively existed by the fact that Idaho took a $199,772, or 17%, discount on what it alleged in the involuntary petition was undisputedly owed to it.  The objective existence of the dispute as to amount owed is particularly conspicuous when this discount is coupled with the fact that Idaho settled Mr. Blixseth's section 303(i) claims against it as reflected in the Idaho Settlement Agreement.

As to California, the disputed nature of its claim conclusively existed by the fact that in the California Settlement Agreement, FTB specifically acknowledged and incorporated into the California Settlement Agreement the existence of a dispute over the amount that Mr. Blixseth allegedly owed.  See Cal. Evid. Code § 622 ("The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration.")  See also Messerschmidt Development Co. v. Crutcher Resources Corp., 84 Cal.App.3d 819, 825-826 (Cal. App. 1978) (applying conclusive presumption of Evid. Code 622 to facts set forth in settlement agreement).  Moreover, Mr. Blixseth in fact received a refund check from FTB shortly after entering into the California Settlement Agreement thereby proving that what FTB claimed Mr. Blixseth owed was in reality disputed and not accurate.

With respect to both California and Idaho, both original petitioning creditors withdrew from the involuntary petition "*nunc pro tunc*" in connection with their settlements with Mr. Blixseth as part of their efforts to avoid potential liability under section 303(i).  Thus, the objective implication of such *nunc pro tunc* withdrawal in connection with settlement is that both California and Idaho perceived risk as a result of the disputed nature of their alleged claims.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

For all the reasons discussed above, neither MDOR, nor Idaho, nor California held undisputed claims against Mr. Blixseth when they filed the involuntary petition and therefore they were not eligible petitioning creditors and this Court should therefore dismiss the involuntary petition. Moreover, even if this Court finds that two of the petitioning creditors' were undisputed as to liability or amount but that one of the petitioning creditors' claims was disputed, then the petition must still be dismissed for failure to satisfy the requirements of section 303(b)(1).

## C.    Effect of "Nunc Pro Tunc" Withdrawal

MDOR was required under 11 U.S.C. § 303(b)(1) to have at least two other petitioning creditors join in the involuntary petition. MDOR could not and cannot proceed under 11 U.S.C. § 303(b)(2) because there existed more than twelve eligible claim holders who could have, but did not, join in the involuntary petition. See Blixseth Declaration, ¶ 22 (Mr. Blixseth had no less than 15 undisputed creditors with aggregate claims of no less than $1.5 million at the time of the involuntary petition). However, only one creditor, MDOR, filed the involuntary petition when the Idaho and California *nunc pro tunc* withdrawals are given effect. Thus, even if none of the original petition creditors' claims were disputed, these *nunc pro tunc* withdrawals defeat the three petitioning creditor requirement of section 303(b)(1) for purposes of the instant motion.

In bankruptcy parlance, the term "*nunc pro tunc*" is often used by courts and practitioners to refer to the retroactive effect of a particular act. In re Tidewater Memorial Hosp., Inc., 110 B.R. 221, 225 (Bankr. E.D. Va. 1989); Matter of Bear Lake West, Inc., 32 B.R. 272, 277 (Bankr. D. Idaho 1983). Nevertheless, whether labeled "*nunc pro tunc*" or "*retroactive*", the Ninth Circuit recognizes that it is within the equitable power of bankruptcy courts to afford such relief when doing so is necessary to carry out of the provisions of the Code. In re Harbin,486 F.3d 510, 521-522 (9th Cir. 2007). For example, in In re Harbin, the Ninth Circuit considered whether bankruptcy courts possessed sufficient equitable power to give "retroactive validation" to a "post-petition" financing transaction. In re Harbin, 486 F.3d at 521-22. The Ninth Circuit concluded that bankruptcy courts do have such equitable power when doing so is consistent and in furtherance of the Code. Id. Here, the Court should give similar "retroactive" effect to California and Idaho withdrawing from the involuntary petition as of the petition date.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    At the core of the bankruptcy system is the power to oversee the restructuring of the debtor-

2    creditor relationship.  In re Bellingham Ins. Agency, Inc., 702 F.3d 553, 559 (9th Cir. 2012).  The

3    Bankruptcy Code allows a creditor to file an involuntary bankruptcy petition against an alleged

4    debtor, but the Code imposes stiff penalties against the wayward creditor who does so either: (1) in

5    bad faith; (2) without being an eligible creditor; or (3) against an alleged debtor who is paying its

6    undisputed bills as they come due.  See 11 U.S.C. § 303(h), (i).  Thus, the Bankruptcy Code strikes

7    an appropriate balance between the need for legitimate creditors to resort to the bankruptcy system

8    and the need to protect an alleged debtor when the creditors' resort to the bankruptcy system in

9    inappropriate or not necessary.  See In re Marciano, 459 B.R. at 59 (quoting Sen. Max Baucus).

10    Here, giving retroactive effect to the withdrawal of Idaho and California would be in

11    furtherance of the debtor-creditor balancing of interests embodied in section 303.  Specifically,

12    California and Idaho availed themselves of what they believed to be their rights against Mr.

13    Blixseth under section 303(b).  While Mr. Blixseth did not dispute his liability to California and

14    Idaho, he did dispute the amount of that liability, which placed at issue California and Idaho's

15    eligibility under section 303(b), and thereby exposing California and Idaho to liability under section

16    303(i)(1),(2).  Moreover, because Mr. Blixseth communicated to all parties immediately after the

17    petition was filed that he believed the involuntary petition was filed in bad faith, California and

18    Idaho were at risk of being liable to him under section 303(i)(2) for Mr. Blixseth's damages and

19    possibly punitive damages.

20    Thus, to settle these risks under section 303, California and Idaho compromised their claims

21    as embodied in their respective Settlement Agreements.  As part of the bargained for exchange that

22    was struck within the risk/right framework of section 303, California and Idaho agreed to withdraw

23    their petitioning creditor status nunc pro tunc in return for Mr. Blixseth foregoing his rights against

24    them under section 303(i).  If this Court were not to give retroactive effect to California and Idaho's

25    withdrawal, then all parties to the Settlement Agreements would be deprived of the benefit of their

26    bargain, a bargain that specifically contemplated the rights and risks embodied in Section 303.

27    Conversely, giving the parties the benefit of their bargain which was struck within the framework of

28    Section 303 would be in furtherance of the purposes of the Bankruptcy Code.  Moreover, giving

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    retroactive effect to California and Idaho's withdrawal was the benefit of the bargain that Mr.

2    Blixseth sought because it allowed him to advance his efforts to dismiss the involuntary petition

3    under section 303(j) while also preserving his right under section 303(i) to seek damages and

4    compensation against MDOR, which was a claim he did not seek to waive.  See e.g., 11 U.S.C. §

5    303(i) (a debtor only waives its right to seek damages upon dismissal of an involuntary petition if

6    all petitioners and the debtor consent).

7        Thus, giving retroactive effect to California and Idaho's withdrawal not only affords the

8    parties to the Settlement Agreements the benefit of their bargain, but under these facts, it promotes

9    the rights and risks of creditors and alleged debtors embodied in section 303(b),(i) and (j).

10       As such, as long as this Court gives retroactive effect to the withdrawal of California and

11   Idaho as petitioning creditors, as it should, then the involuntary petition must be dismissed for

12   failing to be joined by three eligible petitioning creditors, regardless of the disputed nature of

13   MDOR's claims.

14   **4.    CONCLUSION**

15       WHEREFORE, for the reasons set forth herein, Mr. Blixseth respectfully requests that this

16   Court enter an order (i) dismissing the involuntary petition for failing to satisfy the eligible

17   petitioning creditor requirements of 11 U.S.C. § 303(b), and (ii) granting such other and further

18   relief as the Court deems to be just and proper.

19       DATED this 2nd day of April 2013.

20                          **FOX ROTHSCHILD LLP**

21                          By____*/s/ Brett A. Axelrod*_____
                               BRETT A. AXELROD, ESQ.
22                             Nevada Bar No. 5859
                               3800 Howard Hughes Parkway, Suite 500
23                             Las Vegas, Nevada 89169

24
                               CHARLES D. AXELROD, ESQ.
25                             California Bar No. 39507
                               **FOX ROTHSCHILD LLP**
26                             1800 Century Park East, Suite 300
                               Los Angeles, California 90067
27
                               *Counsel for Timothy L. Blixseth*
28