Lars K. Evensen
Nevada Bar No. 8061
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 669-4631
Fax: (702) 669-4650

Kevin W. Barrett, Esq. (*pro hac vice*)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
kbarrett@baileyglasser.com

*Attorneys for BRIAN A. GLASSER, as Trustee
of the Yellowstone Club Liquidating Trust*

## THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>TIMOTHY L. BLIXSETH,<br><br>Alleged Debtor.<br>_____ | CASE NO.: BK-S-11-15010-mkn<br>Involuntary Chapter 7<br><br>**THE YELLOWSTONE CLUB LIQUIDATING TRUST'S OBJECTION TO THE ALLEGED DEBTOR'S MOTION FOR AN ORDER TO SHOW CAUSE AND CROSS-MOTION FOR AN ORDER DIRECTING THE ALLEGED DEBTOR AND HIS ATTORNEYS TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE ENTERED AGAINST THEM** |

### I. PRELIMINARY STATEMENT

Without a scintilla of evidence or any basis for even suggesting that the Trust has destroyed or mishandled any documents or email communications, the Alleged Debtor moves for an order requiring the Trust to show cause why an anti-spoliation order should not be entered against it. He ignores this Court previously stayed the underlying Section 303(i)

1

proceedings pending appeals that remain pending. He did not bother to seek prior relief from that stay from the District Court that still has exclusive jurisdiction of these proceedings. Instead, he claims, the State of Montana allegedly destroyed emails and, therefore, the Alleged Debtor claims, "*maybe*" the Trust did as well.[1] Not only does the motion contravene the stay and the District Court's exclusive jurisdiction over these proceedings, it lacks any substance whatsoever, based, as it is, on nothing more than rank supposition and a half-hearted and obviously baseless accusation of spoliation premised only on another party's alleged conduct. The Court should dismiss the motion for lack of jurisdiction and any factual or legal basis.

But the motion goes far beyond violating an extant stay or lacking jurisdiction or an appropriate basis. Facts the Trust discovered only after this Court stayed these Section 303(i) proceedings establish that the Alleged Debtor's broader attempt to revive these Section 303(i) proceedings is, in a word, sanctionable.

When California, Idaho, and Montana commenced this involuntary case in April 2011, the Alleged Debtor face an immediate and pressing need for money to fight it. To pay for his defense, he "deliberately" and "calculatingly" violated a stipulated injunction in contempt of court, sold a $40 million Mexican resort that comprised the Trust's only collateral for what now total $525 million in unpaid federal court judgments against the Alleged Debtor, and misappropriated, converted, and effectively stole the illicit sale proceeds.[2] Even after he blew through the initial illicit cash infusion, he appears to have funded his continuing legal battle with the misappropriated sale proceeds of assets he had previously fraudulently transferred, with actual intent to hinder, delay, or defraud, away from the Trust to related entities and individuals, even as the Trust litigated claims to recover those very assets. Even leaving aside the Alleged Debtor's established contemptuous conduct in fighting this involuntary petition, in seeking to continue these Section 303(i) proceedings, the Alleged Debtor asks this Court to compel the Trust to pay *a second time* for the costs and expenses the Trust already

---

[1] Doc 673, Motion at *15.

[2] *See* Declaration of Kevin W. Barrett (filed concurrently herewith), Exhibit J at*2. All references to Exhibits herein constitute references to the Exhibits to the Barrett Declaration.

2

involuntarily funded.

The Trust did not know, and had no way of knowing, of the Alleged Debtor's mendacity in defending this involuntary case when the Alleged Debtor commenced his Section 303(i) proceedings against the Trust in the summer of 2013. The Trust had not yet learned of the Alleged Debtor's contemptuous sale or continuing misappropriation of fraudulently transferred property. It had just learned the Alleged Debtor may have sold the Tamarindo Resort in violation of the injunction and begun its investigation. The additional disclosures of the illicit sale's connection to this case and the use of its illicit proceeds to pay the Alleged Debtor's costs and expenses of defending it came two months *after* the stay when the Alleged Debtor admitted the same in a declaration filed in a Montana contempt proceeding. And the full extent of the Alleged Debtor's use of the Tamarindo proceeds to fund this involuntary case—including the payment of $1.9 million to buy-off California and Idaho and the payment of at least $1.4 million to the law firms that previously represented him in this case—did not come out until the middle of a two-year court-ordered accounting odyssey relating to the illicit sale, an accounting the Alleged Debtor so resisted that he spent fifteen months in jail for civil contempt. And the Trust still does not know of the full extent of the Alleged Debtor's conversion and misappropriation of fraudulently transferred property for his own use in defense of the involuntary.

But now that some facts have finally come to light, the conclusion could not be clearer: the Alleged Debtor's attempt to revive his Section 303(i) proceedings seek to force the Trust to pay *a second time* for attorneys' fees and costs paid for with money he effectively stole from the Trust and obtained in contempt of court. It is difficult to even conceive of a greater abuse of Section 303(i). The Trust, accordingly, not only objects to entry of an order to show cause on jurisdictional, procedural, and substantive grounds, it cross-moves for entry of an Order requiring the Alleged Debtor and his attorneys to show cause why they should not be sanctioned for filing and prosecuting the instant motion.[3]

---

[3] The Trust reserves its rights to seek sanctions and other remedies against the Alleged Debtor and his prior attorneys in connection with the 2013 prosecution of the Section 303(i) proceedings after the stay has been lifted.

3

## II. FACTUAL BACKGROUND

**Commencement of This Involuntary Case**

1. The taxing authorities of three States of the United States (California, Idaho, and Montana) initiated this case by filing an involuntary petition against the Alleged Debtor in this Court on April 5, 2011. Doc 1.

2. Although no one else knew it at the time, that filing set off a mad scramble in the Alleged Debtor's camp. *See generally* Exhibit O at ¶¶ 9-16.

3. Facing the need to raise substantial cash on short notice, the Alleged Debtor hurriedly sold a $40 million Mexican resort known as the Tamarindo Resort and related assets for something on the order of $18 million to the Resort's previous owner on April 18, 2011, just thirteen days after the petition's date. *See* Exhibit I at ¶ 9 and Exhibit N at ¶ 6.

4. With the first sale proceeds he repatriated to the United States, the Alleged Debtor immediately transferred more than $1.9 million to pay off his tax obligations to two of the three petitioning States [*see* Exhibit O at ¶ 16], whom he then enticed into withdrawing from the involuntary petition. *See* Docs 20 and 26.

5. He also used Tamarindo sale proceeds to engage and pay Fox Rothschild LLP and Klee, Tuchin, Bogdanoff & Stern LLP at least $1.4 million[4] in fees and expenses to represent him in this case. *See* Exhibit K at Exhibit 1, **1-10 and Exhibit L at *9.

**First Dismissal of This Involuntary Case**

6. Armed with an enhanced armada of attorneys and having bought off two of the petitioning creditors, the Alleged Debtor then moved to dismiss the petition for lack of three petitioning creditors. Doc. 23.

7. This Court, however, initially beat him to the punch. The Court, *sua sponte*, raised venue as an issue pursuant to an order to show cause, Doc 7, and then, after briefing, dismissed the involuntary petition for lack of venue on May 27, 2011. Doc 122.

---

[4] The Alleged Debtor has provided only limited documentation as to his payment of the costs and expenses of his defense to the involuntary. The stated amount of illicit proceeds the Alleged Debtor used to fund the involuntary thus remains entirely preliminary and subject to further review and revision.

4

8. Montana appealed that order to the Bankruptcy Appellate Panel. Doc 146.

9. Eventually, the Bankruptcy Appellate Panel reversed the venue decision, thus returning the involuntary petition to this Court for further proceedings. *See Montana Dep't of Revenue v. Blixseth (In re Blixseth)*, 484 B.R. 360 (Bankr. 9th Cir. 2012).

**Second Dismissal of This Involuntary Case**

10. After the mandate issued, the Alleged Debtor renewed and amended his motion to dismiss for lack of three petitioning creditors on April 2, 2013. Doc 309.

11. It was during this time, specifically on May 8, 2013, that the Trust first joined in the involuntary petition pursuant to Section 303(c) of the Bankruptcy Code. Doc 359.

12. After extensive discovery and an evidentiary hearing, this Court again dismissed the involuntary petition on July 10, 2013. Doc 528. None of the three States, the Court concluded, held undisputed claims at the time of filing, and accordingly none qualified as petitioning creditors under section 303(b)(1). Doc 528 at *15 & *17. Only the Trust stood as a qualifying creditor under section 303(c). Doc 528 at *16.

13. Montana again appealed this Court's decision. Doc 541. The Alleged Debtor subsequently also filed a putative "cross-appeal," challenging the Trust's joinder. Doc 566.

**Commencement and Stay of Section 303(i) Proceedings**

14. On July 24, 2013, two weeks after entry of the second dismissal order, the Alleged Debtor filed a motion under Section 303(i)(1) of the Bankruptcy Code to recover his alleged costs and expenses from Montana and the Trust as a joining creditor. Doc 554.

15. Montana moved to stay all post-dismissal proceedings pending appeal. Doc 583.

16. After briefing and argument, this Court entered an order on September 20, 2013 "stay[ing] all 11 U.S.C. §303(i) and other post-dismissal proceedings against Montana, pending final resolution of the appeals by Montana and [the Alleged Debtor] of the Order of the Court dismissing the case." Doc 635.

17. The Alleged Debtor moved to alter or amend the stay order to permit him to prosecute his motion under Section 303(i)(1) against Montana, Doc 638, but, after further

5

1  briefing and another hearing, the Court left the original stay order in place.  Doc 653.

2      18.    Although the stay order, on its face, appears to apply only to the Section 303(i) proceedings against Montana, the proceedings did not continue as to the Trust either.

    19.    The appeal and cross-appeal continue to pend before the District Court.  *See Montana Department of Revenue v. Blixseth*, Case No. 2:13-cv-01324-JAD (D. Nev.).

**Subsequent Contempt Proceedings in Montana**

    20.    Less than a month after the Court entered its stay, the Trust finally obtained documents showing that the Alleged Debtor had indeed secretly sold the Tamarindo Resort two years earlier in 2011.  *See* Exhibit H, Brief at *10.

    21.    The Trust's discovery of that sale and the subsequent disclosures relating thereto and in other litigation have broken open these Section 303(i) proceedings in ways that could not have been known at the time of their commencement and prosecution in 2013.

**The Tamarindo and Desert Ranch Actions and the Trust's Injunctive Relief**

    22.    Stepping back in time, in the early fall of 2009, the Trust learned that the Alleged Debtor had previously caused the Yellowstone Mountain Club he had founded to transfer the Club's Tamarindo Resort to himself and filed a fraudulent transfer action seeking to recover the Tamarindo Resort for the benefit of the Club's creditors.  *See* Exhibit A at Count III.

    23.    Immediately upon commencing the Tamarindo fraudulent transfer suit, the Trust moved for injunctive relief seeking to bar the Alleged Debtor and his related entities from further transferring the Resort.  *See* Exhibit B.

    24.    The Alleged Debtor immediately stipulated to entry of a temporary injunction barring the Resort's sale on September 21, 2009 and repeatedly stipulated to extend the injunction on a temporary basis until May 2010, when he finally stipulated to extend the injunction through entry of a final judgment in the adversary proceeding.  *See* Exhibits C and D.

    25.    Thereafter, the Trust commenced a suit seeking to avoid additional fraudulent transfers the Alleged Debtor had himself made in 2008 on the eve of the Yellowstone Club

6

bankruptcy to a newly created "creditor protection vehicle," Desert Ranch LLLP, to protect himself against both existing and future claims relating to his management and control of the Yellowstone Mountain Club. *See* Exhibit E. That action remains pending.

26. Immediately after the Montana bankruptcy court entered its initial $40 million fraudulent transfer and breach of fiduciary duty judgment against the Alleged Debtor,[5] the Trust moved for an injunction in the Desert Ranch suit barring him and Desert Ranch from further transferring their assets without prior court approval. *See* Exhibit F.

27. The Montana bankruptcy court, however, denied that motion, concluding that the prior stipulated injunction barring sale of the $40 million Tamarindo Resort adequately protected the Trust's $40 million judgment against the Alleged Debtor. *See* Exhibit G at *4-5.

**The Alleged Debtor's Secret Sale and the Trust's Contempt Proceedings**

28. A few months later, however, with the extended September 2009 injunction still in place, the Alleged Debtor secretly sold the Tamarindo Resort in violation of the injunction to fund his defense of the involuntary. *See* Exhibit O at ¶¶ 4-15.

29. In October 2013, a month after this Court entered its stay pending appeal, the Trust filed a motion seeking to hold the Alleged Debtor in contempt of court for selling the Resort in violation of the injunction. *See* Exhibit H.

30. On November 11, 2013, the Alleged Debtor responded to the Trust's contempt motion, filing a declaration in which he admitted to selling the Tamarindo Resort in response to the filing of this involuntary case to fund his defense. *See* Exhibit I at ¶ 9.

31. After an evidentiary hearing in December 2013, the United States District Court in Montana entered an order of contempt against the Alleged Debtor. *See* Exhibit J.

32. In that order, the District Court directed the entry of a default judgment against the Alleged Debtor for at least the amount of the illicit sale's proceeds and directed the Alleged

---

[5] *Blixseth v. Kirschner (In re Yellowstone Mountain Club, LLC)*, 436 B.R. 598 (Bankr. D. Mont. 2010), *aff'd*, 2014 WL 1369363 (D. Mont., Apr. 07, 2014), *aff'd in part, rev'd in part*, 656 Fed.Appx. 307 (9th Cir. 2016). On remand, the bankruptcy court issued an amended judgment, increasing the Trust's judgment to $286.4 million.

7

Debtor to account for those proceeds. *Id.* at ¶¶ 4 & 5.[6]

**The Alleged Debtor's "Accounting"**

33. The contempt order's accounting provision took on a two-year life of its own, as the Alleged Debtor repeatedly evaded his obligation to account. *See, e.g.,* Exhibit O at ¶¶ 20-32.

34. In fact, the Alleged Debtor's deliberate evasion of the accounting requirement left him in further contempt resulting in his incarceration for fifteen months. *See* Exhibits M and O.

35. The accounting process has, to date, encompassed at least seven different accountings, depositions of three witnesses in Mexico and one in the United States, three evidentiary hearings, and eight trips to the Court of Appeals on five mandamus petitions and three appeals. *See, e.g.,* Exhibit O at ¶¶ 20-32.

36. The Alleged Debtors' last two appeals remain pending before the Court of Appeals [*see Blixseth v. Glasser*, Case Nos. 16-35194 & 16-35405 (9th Cir.)], and the District Court has stayed the proceedings relating to some twenty follow-on orders to show cause against the Alleged Debtor, his related entities and individual relatives, and three of his (former) lawyers pending resolution of those appeals [*see, e.g.,* Exhibit Q at *5].

37. Despite the still incomplete accounting and the continued pendency of the accounting proceedings, the Alleged Debtor has provided enough information to allow the Trust to say more precisely how the Alleged Debtor used the Tamarindo sale proceeds to fund his defense of this involuntary case, including the use of the first $1.9 in proceeds to pay off California and Idaho and at least $1.4 million to pay his bankruptcy attorneys for their services. *See* Exhibit L at *9 & *19.

38. In connection with the contempt proceeding and other ongoing litigation with or relating to the Alleged Debtor, the Trust also learned the Alleged Debtor had caused Desert Ranch to sell or further fraudulently transfer other assets and had converted the proceeds

---

[6] On appeal, the Court of Appeals affirmed the District Court's contempt order. *See Glasser v. Blixseth (In re Yellowstone Mountain Club, LLC*, 585 Fed. Appx. 393 (9th Cir., Oct. 9, 2014).

8

thereof to help fund this involuntary and other litigation. *See, e.g.,* Exhibit P.

39. It thus now appears that the Alleged Debtor obtained a substantial portion of, if not all, the funds used to pay the costs and expenses of his defense in violation of injunctions or otherwise in contempt of court, with funds rightfully belonging to the Trust.

### III. ARGUMENT

Having stayed the post-dismissal proceedings pending final resolution of appeals that continue to pend, this Court lacks jurisdiction to hear the Alleged Debtor's motion. Moreover, even if this Court has continuing jurisdiction over any post-dismissal proceedings, the Alleged Debtor fails to allege any basis for entering an order to show cause, much less the substantive relief he requests, against the Trust. But even beyond the jurisdictional, procedural, and substantive issues relating to the motion, the Alleged Debtor's filing thereof and his attempt to revive his improper section 303(i) proceedings against the Trust warrant entry of an order to show cause requiring the Alleged Debtor and his attorneys to show cause why they should not be sanctioned for filing and prosecuting the motion.

**A. This Court Lacks Jurisdiction to Hear and Determine the Alleged Debtor's Motions**

Concurrent with its appeal, Montana moved for and obtained an order staying all post-dismissal proceedings and the 303(i) proceedings pending the final resolution of the appeal. Those appeals divested this Court of jurisdiction to hear and consider anything relating to the appeals, including this Court's order staying post-dismissal proceedings. As a consequence, this Court lacks jurisdiction to hear and consider the Alleged Debtor's motion.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "Once a notice of appeal is filed jurisdiction is vested in the Court of Appeals, and the trial court thereafter has no power to modify its judgment in the case or proceed further except by leave of the Court of Appeals." *Visioneering Constr. & Dev. Co. v. United States Fidelity & Guar. (In re Visioneering Construction),* 661 F.2d 119, 124 n. 6 (9th Cir. 1981). "The general rule is that once a notice of appeal has been filed, the lower court

9

loses jurisdiction over the subject matter of the appeal." *Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 200 (9th Cir. 1977). "Underlying this principle is a concern for ensuring the integrity of the appellate process. . . . To this end, a trial court may not interfere with the appeal process or with the jurisdiction of the appellate court." *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 798 (Bankr. 9th Cir. 1995).

Insofar as is pertinent here, the Court of Appeals has expressly held that an appeal divests the lower court of jurisdiction to reconsider an order staying further proceedings pending the outcome of the appeal. *See Burchinal v. Central Washinton Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484 (9th Cir. 1987). As the Court of Appeals held in *Burchinal*:

> Generally a bankruptcy court has wide latitude to reconsider and vacate its own decisions. *In re Bialac,* 694 F.2d 625, 627 (9th Cir. 1982). A pending appeal, however, divests a bankruptcy court of jurisdiction. *Id.; In re Combined Metals Reduction Co.,* 557 F.2d 179, 200–01 (9th Cir. 1977).

*Id*. at 1489; *see also Ho v. Dai Hwa Electronics (In re Ho)*, 265 B.R. 603, 605 (Bankr. 9th Cir. 2001) ("*Burchinal* . . . stands for [the proposition] that the court cannot *reconsider* an earlier decision denying a stay . . . after a notice of appeal is filed.") (emphasis in original).

In view of the pending appeals and the prior entry of the order staying post-dismissal proceedings, this Court has no authority to modify its prior stay and, accordingly, no jurisdiction to hear the Alleged Debtor's motion for an order to show cause.

**B. The Alleged Debtor Alleges No Basis for the Entry of an Order to Show Cause or the Substantive Relief He Seeks**

It goes without saying that a movant must produce evidence to justify the issuance of an order to show cause. *See City of El Monte v. Zfaty (In re TV, LLC)*, 2012 WL 12882774 (C.D. Cal., July 10, 2012), *aff'd,* 588 Fed. Appx 587 (9th Cir., Dec. 15 , 2014). "The mere existence of an order to show cause suggests that the court has made a preliminary determination . . . ." *Costa v. Welch (In re Costa)*, 172 B.R. 954, 963 (Bankr. E.D. Cal. 1994). Such a determination is left to this Court's sound discretion, reviewable only for a clear error of judgment. *City of El Monte*, 2012 WL 12882774 at *2*. But "[w]hen issued based on

///

///

10

allegations that are unlikely to warrant [the requested relief], the order to show cause smacks of bullying and creates perceptions that call the court's impartiality into question." *Costa*, 172 B.R. at 963-64.

Pursuant to his motion for an order to show cause, the Alleged Debtor seeks a "preservation/protection order to insure no further evidence is destroyed by any petitioning creditor." Doc 674, Motion at *10. The Alleged Debtor cites no legal authority for entering the requested substantive order. Rule 37(e) of the Federal Rules of Civil Procedure, made applicable to this contested matter pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7037, explicitly governs the consequences flowing from a party's destruction of electronically stored information. The Court of Appeals has also recognized the courts' inherent authority to impose sanctions for despoliation of evidence. *Fjelstad v. American Honda Motor Co., Inc.,* 762 F.2d 1334, 1337–38 (9th Cir.1985). In both cases, however, the courts impose sanctions after the fact and require evidence, among other things, that a party actually destroyed relevant evidence. In bringing his motion, the Alleged Debtor cites no authority for issuing a proscriptive order, particularly in the absence of any evidence that the subject party actually destroyed evidence.

Evidence that the Trust actually destroyed any evidence is missing entirely from the motion. Indeed, the Alleged Debtor makes no real allegations the Trust even poses a risk to destroy emails or other evidence, and nothing in the correspondence between the Trust or the Alleged Debtor gives rise to any contrary inference. The Alleged Debtor's only offered "evidence" the Trust "maybe" destroyed emails is, in fact, the conduct of another party—Montana—and not any conduct on the part of the Trust. Insofar as the Trust itself is concerned, the entire supposed basis for the relief requested seems to be that

(a) communications between the former and successor trustees of the Trust are somehow probative of the Alleged Debtor's alleged damages under Section 303(i)(2) of the Bankruptcy Code (Doc 674, Motion at *8);

(b) the successor trustee has not taken physical possession of the former trustee's files (Doc 674, Motion at *8);

11

(c) the Trust failed to address the Alleged Debtor's "concerns about possible destruction of evidence by the current or previous Trustee of the [Trust]" (Doc 674, Motion at *8); and

(d) the Trust's questioning of the basis for the Trustee's concerns and requests constitutes "evasive . . . responses" (Doc 674, Motion at *10), suggests the Trustee "possibly engaged in the destruction of evidence . . . [and] acted in bad faith by purposefully evading efforts to resolve this discovery concern" (Doc 674, Motion at *9-10), and shows that the Trust "see[s] no fault in the destruction of evidence that has occurred thus far" (Doc 674, Motion at *11).

Glaringly missing from the motion is any real or imagined basis for the Alleged Debtor's supposed "concerns" that the Trust did or would destroy emails or other evidence. But each of cited contentions raises so many significant factual and legal issues that those contentions cannot possibly serve as a basis for the issuance of a show cause order. Not that it would establish a basis for the order, but the Alleged Debtor fails to explain how communication between the two trustees is probative of anything in this matter. The statement, moreover, fails to take account of the fact that the successor trustee (Mr. Glasser) was the former trustee's (Mr. Kirschner's) attorney prior to assuming the trustee mantel in May 2013. Any communications between the two prior to the successor trustee being named as such would, it would seem obvious, be subject to the attorney-client privilege and not subject to discovery. It also bears emphasis that the Alleged Debtor has not yet even brought a claim for damages under Section 303(i)(2) of the Bankruptcy Code. As to the Alleged Debtor's remaining contentions in "support" of its motion, the facts simply do not bear out the Alleged Debtor's claim. The Alleged Debtor's contention that a "meet and confer" took place is not entirely accurate, as the Alleged Debtor and the Trust traded emails in which the Trust simply questioned the basis for the Alleged Debtor's requests of the Trust while still inviting further communication. *See* Declaration of Summer Shaw [Doc 674], Exhibit 4. Questioning the basis of the Alleged Debtor's purported "concerns," certainly without more and particularly under these circumstances, cannot reasonably be construed as failing to address those "concerns," an "evasive response," or evidence that the Trust "engaged in the destruction of evidence," "acted in bad faith," "purposefully evad[ed] efforts to resolve this discovery

12

concern," or "see[s] no fault in the destruction of evidence." In the end, the Alleged Debtor does not make even one allegation, much less produce evidence, that the Trust actually destroyed or even poses a risk of destroying emails or evidence, much less willfully destroyed with a culpable state of mind emails or evidence relevant to the Alleged Debtor's claims or defenses, the *sine qua non* of proving a spoliation claim under Rule 37 or the Court's inherent powers. *See United States v. Kitsap Physicians Services*, 314 F.3d 995, 1001 (9th Cir. 2002). At a minimum, "[m]ere speculation is an insufficient basis for a finding of spoliation." *U.S. Legal Support, Inc. v. Hofioni*, 2014 WL 172336 at *4 (E.D. Cal., Jan. 15, 2014).

The bottom line is that the Alleged Debtor alleges no cognizable legal or factual basis for issuing the requested order to show cause or an anti-spoliation order against the Trust.[7]

## C. The Court Should Issue an Order Requiring the Alleged Debtor and His Attorneys to Show Cause Why They Should Not Be Sanctioned for Filing the Motion

The Alleged Debtor and his new attorneys filed their motion for an order to show cause in this Court without regard to obvious questions regarding this Court's jurisdiction and the extant stay pending appeal. They brought their motion and request substantive relief without any basis, alleged or otherwise, in fact or law. That motion has required the Trust to respond needlessly to a motion this Court may not hear and consider and that has no basis in law or fact.

But perhaps more to the point, the Alleged Debtor's motion seeks to restart Section 303(i) proceedings that are themselves sanctionable, at least as applied to the Trust, as facts developed over the past four years have revealed. In its starkest terms, the Alleged Debtor's Section 303(i) proceedings seek to impose attorneys' fees and costs the Alleged Debtor paid for with asset sale proceeds he effectively stole from the Trust in violation of a stipulated injunction and in the face of pending fraudulent transfer actions to recover the assets sold, in each case in contempt of court. Even leaving aside the question of whether an alleged debtor

---

[7] The Trust's questioning of the basis for the Alleged Debtor's supposed concerns certainly does not support the imposition of sanctions under Rule 11, Section 105 of the Bankruptcy Code or Section 1927, as the Alleged Debtor suggests. *See* Doc 674, Motion at *10 n.2 & *10-11.

13

who engaged in such conduct should ever be entitled to recover under Section 303(i),[8] the simple fact is that the Trust *has already paid* the Alleged Debtor's attorneys' fees and costs associated with his defense of the involuntary. He plainly lacks any basis to claim recovery under Section 303(i) against the Trust.

To remedy the Alleged Debtor's obvious abuse of judicial process, the Court has at least two sources of power to impose sanctions. First, "bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court." *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996). More broadly, "[u]nder its 'inherent powers,' a . . . court may . . . award sanctions in the form of attorneys' fees against a party or counsel who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006).[9] In addition, Title 28, Section 1927 provides "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously[10] may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Much like a claim under the courts' inherent powers, a Section 1927 sanction requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (9th Cir. 1998). An award of sanctions under Section 1927 or the district court's inherent authority is within a court's powers when "counsel has 'willfull[y] abuse[d] judicial processes' or otherwise conducted litigation in bad faith." *Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985). "A party 'demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.'" *Leon*, 464 F.3d at 961. "Bad faith

---

[8] A debtor's improper conduct provides one basis for denying an alleged debtor's costs and expenses under Section 303(i)(1). *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004).

[9] The Trust reserves its right upon a lifting of the stay of the Section 303(i) proceedings to seek dismissal of those proceedings. *See Leon*, 464 F.3d at 958 ("[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.").

[10] "Vexatious" is defined as "lacking justification and intended to harass." *Overnight Transp. Co. v. Chicago Indus. Tire. Co.,* 697 F.2d 789, 795 (7th Cir. 1983).

14

is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990); *see also Toombs*, 777 F.2d at 471 (court need not make express findings as to counsel's state of mind because record contained sufficient evidence to support a decision); *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996) ("The filing of repetitive and frivolous suits constitutes the type of abuse for which an injunction forbidding further litigation may be an appropriate sanction."). As pertinent to the Alleged Debtor's motion, "willful continuation of a suit known to be meritless" satisfies section 1927. *Edwards*, 153 F.3d at 246.

Although the Trust did not know it at the time, in the summer of 2013, the Alleged Debtor filed a factually and legally frivolous motion for costs and expenses under Section 303(i)(1) against the Trust. The Alleged Debtor, but not the Trust, knew that he had used the illicit proceeds of his contemptuous sale of the Tamarindo Resort and related assets to fund the costs and expenses, including attorneys' fees, relating to this involuntary proceeding. He knew the Resort and the proceeds thereof served as the Trust's only collateral for its previously issued judgment against the Alleged Debtor. He knew he had sold and converted the proceeds of other fraudulently transferred assets in the face of pending litigation seeking their recovery. He knew, therefore, that he had used funds in contempt of court and that rightfully belonged to the Trust to pay for the defense of this involuntary proceeding and that, therefore, those funds could not be recouped at least from the Trust.

It is not known whether the lawyers who previously represented the Alleged Debtor in this case knew the relevant facts or not. But it is clear his current set of lawyers knew, or should have known, those facts as they well knew of the contempt order, the subsequent accounting, and their client's failure to fully account that landed him in jail. He was in jail for that reason at the very time he first retained them, and they had full and complete access to all the pleadings and backup documentation in those contempt and accounting proceedings, including pleadings in which the Trust explicitly noted the Alleged Debtor's use of the illicit funds to pay the costs and expenses of this involuntary proceeding. *See* Exhibit L at *9 & *19.

15

They also knew the Trust had sued Desert Ranch to recover numerous fraudulent transfers and that the Alleged Debtor had almost fully disposed of those fraudulently assets and their proceeds, as the Alleged Debtor retained them for the express purpose of representing that entity in filing its own chapter 7 case.

In view of the information either known or otherwise readily available to the Alleged Debtor and his attorneys, the Alleged Debtor's motion for an order to show cause qualifies for sanctions under this Court's inherent powers and Section 1927. The Alleged Debtor and his attorneys were, at a minimum, reckless in filing the motion seeking to continue the frivolous Section 303(i) proceedings in view of the facts the Alleged Debtor knew in 2013 and that had come out into plain and very public view during the succeeding four years. Indeed, given the lengths to which the Alleged Debtor had to go to bring a motion against the Trust—particularly, ignoring the District Court's exclusive jurisdiction and trumping up a half-hearted accusation and baseless supposition on alleged facts not even attributable to the Trust—the Court may well conclude that the Alleged Debtor's sole purpose in bringing the motion was to harass the Trust.

This would not be the first time that the Alleged Debtor and his (other) attorneys have brought frivolous actions or filed frivolous pleadings for wholly improper purposes. In issuing a *sua sponte* order to show cause why sanctions should not be imposed on the Alleged Debtor and several of his (former) attorneys for bringing a frivolous recusal motion in the Yellowstone Mountain Club bankruptcy, the Ninth Circuit Court of Appeals stated:

> Timothy Blixseth and his attorneys leveled nineteen accusations of misconduct against a bankruptcy judge who ruled against Blixseth. As explained in our opinion, those accusations are wholly without merit. See *Blixseth v. Yellowstone Mountain Club*, No. 12-35986 (9th Cir. 2014). The recusal motion and resulting appeals thus appear to have been an effort on Blixseth's part to rid himself of a judge who had ruled against him.
>
> *This is not an isolated incident. Blixseth and his attorneys appear to have engaged in a pattern of sanctionable behavior throughout the innumerable proceedings* that have resulted from the Yellowstone bankruptcy. Their unprofessional litigation tactics have already resulted in sanctions against Blixseth and his attorneys, *In re Big Springs Realty LLC*, No. 09-00065, 2010 WL 147309 (Bankr. D. Mont. Jan. 11, 2010), and Blixseth himself has been held in contempt

of court, Minute Order, *Glasser v. Blixseth*, No. 2:13-cv-00068, Dkt. #58 (D. Mont. Dec. 23, 2013).

Order, *Blixseth v. Yellowstone Mountain Club, LLC*, No. 12-35986 at *1-2 (9th Cir., Feb. 18, 2014). The order to show cause ended with a published opinion of the Court of Appeals imposing sanctions against the Alleged Debtor and one of his (former) lawyers. *See Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004 (9th Cir. 2015). Tellingly, the Court of Appeals noted that the Alleged Debtor could not refrain from reiterating his "conspiracy theories" and "hurl[ing] baseless accusations against one of the judges on this panel" even in his response to the order to show cause. *Id.* at 1007. As if to emphasize the gravity of the Alleged Debtor's sanctionable conduct, the Court of Appeals only recently affirmed sanctions awards in favor of the Trust and others for some $190,000 in yet another published decision. *See Blixseth v. Yellowstone Mountain Club, LLC*, __ F.3d __ (9th Cir., Apr. 18, 2017) (available on Westlaw at 2017 WL 1379203).

Perhaps even more galling, the conspiracy theories and baseless accusations the Alleged Debtor and his newest attorneys level against the current Montana Governor in trying to justify his motion against the Trust channel similar conspiracy theories and baseless accusations the Alleged Debtor and his (former) attorneys had hurled against the Montana bankruptcy judge that ultimately led to the Ninth Circuit sanctions order. *Compare* Memorandum of Decision, *In re Yellowstone Mountain Club, LLC*, No. 08-61570-11 at *46 (Bankr. D. Mont., Feb. 25, 2011) (noting the Alleged Debtor's contention that former Governor Schweitzer of Montana "met [with others] and somehow exerted pressure on [the Bankruptcy Judge]" to rule against him) *with* Doc 674, Motion at *4-5 ("Mr. Blixseth will prove the filing of this case was done as a legal favor by some of the highest officials in Montana to the benefit of their political supporters to choke out Mr. Blixseth's financial ability to properly defend himself in other matters and to silence his opposition and appeals; a scheme resulting in one of the greatest heists in bankruptcy history.").

Thus, the Alleged Debtor's actions in filing and prosecuting these Section 303(i) proceedings and the instant motion for an order to show cause appear to be part of an

17

overarching legal and litigation strategy filled with all sorts of conspiracy theories and baseless accusations that has repeatedly been found to be baseless and sanctionable, even by an authority no less than the Court of Appeals and on its own motion.  Under these circumstances, this Court is more than justified in issuing an order to show cause requiring the Alleged Debtor and his newest attorneys to appear and show cause why sanctions should not be imposed for the filing and prosecution of their motion for an order to show cause against the Trust.

### IV.  CONCLUSION

The Court should enter an order (a) denying the Alleged Debtor's motion for an order to show cause and (b) requiring the Alleged Debtor and his attorneys to show cause why they should not be sanctioned for the filing and prosecution thereof, and grant the Trust such other and further relief as is just.

Dated:  May 10, 2017

*/s/ Lars K. Evensen*
Lars K. Evensen, P.E., Esq.
HOLLAND & HART LLP
9555 Hillwood Drive
Second Floor
Las Vegas, Nevada 89134
 (702) 669-4631 (telephone)
 (702) 669-4650 (facsimile)
lkevensen@hollandhart.com

Kevin W. Barrett, Esq.
(admitted *pro hac vice*)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
kbarrett@baileyglasser.com

*Attorneys for Brian A. Glasser, as Trustee of the Yellowstone Club Liquidating Trust*