_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
June 03, 2021

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

In re:                                  )  Case No.: 11-15010-MKN
                                        )  Chapter  7
TIMOTHY L. BLIXSETH,                    )
                                        )  Date:   November 13, 2020
                    Alleged Debtor.     )  Time:  9:30 a.m.
_____)

**ORDER ON MOTION CONFIRMING DISMISSAL OF INVOLUNTARY PETITION, OR, IN THE ALTERNATIVE, MOTION TO DISMISS INVOLUNTARY PETITION FOR WANT OF PROSECUTION PURSUANT TO 11 U.S.C. § 303(j)[1]**

On November 13, 2020, the court heard the Motion Confirming Dismissal of Involuntary Petition, or, in the Alternative, Motion to Dismiss Involuntary Petition for Want of Prosecution Pursuant to 11 U.S.C. § 303(j) ("303(j) Motion"). The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.

**BACKGROUND[2]**

---

[1] In this Order, all references to "ECF No." are to the numbers assigned to the documents filed in this bankruptcy case as they appear on the case docket maintained by the Clerk of the Court. All references to "Section" are to provisions of the Bankruptcy Code, 11 U.S.C. § 101, et seq. All textual references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure. All textual references to "Civil Rule" are to the Federal Rules of Civil Procedure. All references to "FRE" are to the Federal Rules of Evidence.

[2] Pursuant to FRE 201(b), the court takes judicial notice of all materials appearing on the docket in the above-captioned case as well as the publicly filed documents referenced in those materials. See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). See also Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

On April 5, 2011 ("Petition Date"), the Montana Department of Revenue ("Montana"), joined by the Idaho State Tax Commission ("Idaho") and the California Franchise Tax Board ("California"), filed an involuntary Chapter 7 petition ("Involuntary Petition") against Timothy L. Blixseth, Alleged Debtor, commencing the above-captioned case ("Involuntary Proceeding"). (ECF No. 1).  All three petitioning creditors asserted unsecured claims for unpaid taxes owing to their respective States, with $219,258.00 asserted by Montana, $1,117,914.00 asserted by Idaho, and $986,957.95 asserted by California.

On April 8, 2011, an Order to Show Cause Why Venue in this District is Proper and Why Transfer of Case is Not Appropriate ("OSC") was entered, setting an initial hearing date of April 22, 2011.  (ECF No. 7).

On April 20, 2011, Idaho filed a notice of withdrawal from participation as a petitioning creditor.  (ECF No. 20).

On April 20, 2011, the Alleged Debtor filed a response to the OSC that included a request to dismiss or abstain ("Dismissal Request").  (ECF No. 23).  The Alleged Debtor's Dismissal Request also sought monetary sanctions against the petitioning creditors under Bankruptcy Rule 9011 and Section 303(i).

On April 20, 2011, California also filed a notice of withdrawal from participation as a petitioning creditor.  (ECF No. 26).

On April 22, 2011, the initial hearing was held on the OSC by the assigned bankruptcy judge, Bruce A. Markell ("Judge Markell").  The OSC hearing was continued to May 18, 2011.

On April 27, 2011, the Alleged Debtor filed a motion under Bankruptcy Rule 9011 for sanctions to be awarded against Montana and its agents and attorneys.  (ECF No. 55).  The motion was set to be heard at the same time as the continued OSC hearing.

On May 5, 2011, a motion for relief from stay was filed by the Yellowstone Club Liquidating Trustee ("YCLT") to allow it to proceed with various appellate matters related to separate bankruptcy proceedings arising out of the United States Bankruptcy Court for the District of Montana ("YCLT RAS Motion").  (ECF No. 82).  That motion was noticed to be heard on June 7, 2011.  (ECF No. 83).

On May 18, 2011, the continued OSC hearing was conducted.  After consideration of the evidence and arguments presented, Judge Markell orally ruled that the Alleged Debtor's principal assets, consisting of intangible interests in two Nevada limited liability companies, are not located in Nevada, but at the place of the Alleged Debtor's undisputed residence in the State of Washington.  As a result, the court concluded that the Involuntary Proceeding should be dismissed for lack of venue.  The court also concluded that jurisdiction should be retained to consider the issuance of sanctions against the petitioning creditors and their representatives.[3]

On May 27, 2011, Judge Markell entered an "Order Dismissing Involuntary Petition Against Alleged Debtor Timothy L. Blixseth" that incorporated by reference his oral rulings issued at the OSC hearing ("First Dismissal Order").  (ECF No. 122).  In light of the dismissal, the court also concluded that Alleged Debtor's Dismissal Request was moot as well as the YCLT RAS Motion.  That order reserved jurisdiction over the Alleged Debtor's sanction requests and directed the filing of renewed motions.

On June 10, 2011, Montana appealed the First Dismissal Order to the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP").  (ECF No. 146).[4]

On June 30, 2011, Judge Markell entered an order denying Montana's request for a stay pending its appeal of the First Dismissal Order.  (ECF No. 186).

On July 19, 2011, however, the BAP entered an order granting Montana's request for a stay pending appeal of the First Dismissal Order.  (ECF No. 236).  Later the same day, this bankruptcy court entered an "Order Regarding Stay Pending Appeal."  (ECF No. 237).  That order stated, *inter alia*, that "Given the stay pending appeal issued today by the Bankruptcy Appellate Panel, all hearings in this case are hereby taken off calendar, and the parties are ordered to hold in abeyance all discovery.  No new motions of any type may be filed without the

---

[3] A transcript of the continued OSC hearing ("OSC Transcript") was filed on May 24, 2011.  (ECF No. 120).

[4] In his oral ruling on the OSC, Judge Markell noted that both Idaho and California had filed withdrawals from participation in the case *nunc pro tunc* to the Petition Date, but that no order approving the withdrawals had been entered.  See OSC Transcript at 55:7-13.  The court also noted that Montana was the only petitioner actively participating in response to the OSC.

prior permission of the Bankruptcy Appellate Panel confirming that its stay does not prohibit the filing and prosecution of such motions.  If, or when, the stay is dissolved or appropriately modified, the court will hold a status conference to assess what actions should then be taken."

On December 17, 2012, a divided three-judge panel of the BAP entered an Opinion reversing the First Dismissal Order.  (ECF No. 250).  The majority concluded that the Alleged Debtor's intangible interests in the two Nevada limited liability companies were located in Nevada and venue in Nevada therefore was proper.  The dissent agreed with Judge Markell that the Alleged Debtor's interest in those assets are general intangibles that are located for venue purposes at the Alleged Debtor's place of residence in the State of Washington.

On December 18, 2012, the bankruptcy court entered an Order Setting Scheduling Conference.  (ECF No. 251).  The order directed Montana, Idaho, California, and the Alleged Debtor to appear for a scheduling conference.

On January 11, 2013, after the scheduling conference was conducted, a Scheduling Order was entered.  (ECF No. 256).

On January 18, 2013, the Alleged Debtor filed a Renewed Motion to Dismiss Involuntary Case ("Second Dismissal Motion").  (ECF No. 261).  The Alleged Debtor asserted that it had more than 12 creditors and that the Involuntary Petition no longer had at least 3 petitioning creditors as required by Section 303(b)(1).

On January 23, 2013, pursuant to the Scheduling Order, Montana and the Alleged Debtor filed a Joint Discovery Plan regarding the Second Dismissal Motion.  (ECF No. 265).  That plan provided deadlines for expedited discovery to be conducted, including production of documents, deposition of witnesses, issuance of subpoenas, and the like.  It further provided deadlines for the submission of witness declarations, excerpts of deposition transcripts, witness lists, exhibit lists, and trial stipulations.  The Joint Discovery Plan was approved by a court order entered on January 24, 2013.  (ECF No. 266).

On January 25, 2013, an amendment to the Joint Discovery Plan was submitted by Montana and the Alleged Debtor.  (ECF No. 270).  The amended Joint Discovery Plan was

approved by a court order that set the trial of the Second Dismissal Motion for February 27, 2013.  (ECF No. 271).

On February 1, 2013, an order was entered vacating the hearing on the Second Dismissal Motion as well as the discovery deadlines.  (ECF No. 283).

On March 15, 2013, the bankruptcy court entered another Order Setting Scheduling Conference.  (ECF No. 294).  The order directed Montana and the Alleged Debtor to appear for a scheduling conference to be held on March 25, 2013.

On March 22, 2013, Montana filed a motion to abate further proceedings on the Second Dismissal Motion to allow "global mediation" to be pursued.  (ECF No. 297).

On March 25, 2013, the court conducted the scheduling conference at which time a two-day trial on the Second Dismissal Motion was set for June 13 and 14, 2013.  The court directed counsel for Montana and the Alleged Debtor to submit a related scheduling order.

On March 28, 2013, a further amended Joint Discovery Plan was submitted by Montana and the Alleged Debtor.  (ECF No. 306).  The further amended Joint Discovery Plan specifically provided that the Second Dismissal Motion would "be limited to contested issues under 11 U.S.C. §303(b)" and that "[d]iscovery and trial on the Motion shall be limited as such and, therefore, will not encompass contested issues under 11 U.S.C. §303(h), (i), (k) and F.R.B.P. 9011."  Joint Discovery Plan at ¶3.  It also scheduled a pretrial conference to be held on May 28, 2013.

On April 2, 2013, the Alleged Debtor filed an amendment to the Second Dismissal Motion as permitted by the further amended Joint Discovery Plan.  (ECF No. 309).

On April 9, 2013, an order was entered approving the further amended Joint Discovery Plan, including the agreed terms and deadlines specified therein.  (ECF No. 313).

On April 17, 2013, Montana filed a notice of deposition and subpoena duces tecum with respect to the California Franchise Tax Board.  (ECF No. 330).

On May 6, 2013, Montana filed an amended notice of deposition and subpoena duces tecum with respect to Michael J. Flynn.  (ECF No. 350).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

On May 8, 2013, Brian A. Glasser, as Trustee of the YCLT, filed a "Notice of Joinder in Involuntary Petition" pursuant to which the YCLT joined the Involuntary Petition. (ECF No. 359). YCLT asserted an unsecured claim in the amount of $40,992,210.81 based on a judgment previously entered by the bankruptcy court in Montana.

On May 13, 2013, Montana filed notices of deposition and subpoena duces tecum with respect to the California Franchise Tax Board as well as with respect to the Idaho State Tax Commission. (ECF Nos. 367 and 370).

On May 14, 2013, the Alleged Debtor filed a notice of deposition and notice of subpoena with respect to the California Franchise Tax Board (ECF Nos. 376 and 377), as well as with respect to the Idaho State Tax Commission. (ECF Nos. 378 and 379). The following day, the Alleged Debtor filed amended notices of subpoena with respect to both entities. (ECF No. 383 and 384).

On May 16, 2013, a Second Amended Joint Discovery Plan was submitted by Montana and the Alleged Debtor. (ECF No. 390). The amended discovery plan specifically provided that the Second Dismissal Motion would "be limited to contested issues under 11 U.S.C. §303(b)" and that "[d]iscovery and trial on the Motion shall be limited as such and, therefore, will not encompass contested issues under 11 U.S.C. §303(h), (i), (k) and F.R.B.P. 9011." Second Amended Joint Discovery Plan at ¶3. Attached to the amendment were preliminary witness lists from both Montana and the Alleged Debtor, that included unnamed representatives from Idaho and California.

On May 20, 2013, the Alleged Debtor filed an amended notice of subpoena and amended notice of deposition of Todd Bailey of the California Franchise Tax Board. (ECF Nos. 400 and 401).

On May 22, 2013, an order was entered approving the Second Amended Joint Discovery Plan. (ECF No. 413).

On May 28, 2013, a pretrial conference was conducted confirming the June 13 and 14, 2013 trial dates.

On June 4, 2013, a Third Amended Joint Discovery Plan was filed. (ECF No. 465). The amended discovery plan set specific deadlines for certain depositions to be taken, as well as to exchange copies of all declarations, excerpts of deposition transcripts and exhibits to be used at trial. The further amended discovery plan specifically provided that the Second Dismissal Motion would "be limited to contested issues under 11 U.S.C. §303(b)" and that "[d]iscovery and trial on the Motion shall be limited as such and, therefore, will not encompass contested issues under 11 U.S.C. §303(h), (i), (k) and F.R.B.P. 9011." Third Amended Joint Discovery Plan at ¶3. Attached to the Third Amended Joint Discovery Plan were preliminary witness lists from both Montana and the Alleged Debtor, which included the Alleged Debtor and unnamed representatives from Idaho and California. Also included on the witness lists were individuals named Mike Flynn ("Flynn"), Spencer Marks ("Marks"), Kim Davis ("Davis"), and Pete Donnelly ("Donnelly").

On June 6, 2013, an order was entered approving the Third Amended Joint Discovery Plan. (ECF No. 472).

On June 11, 2013, counsel for the Alleged Debtor and counsel for Montana filed a Joint Statement of Evidentiary Objections and Responses Thereto ("Joint Evidentiary Objections"). (ECF No. 490). Among other items, the Alleged Debtor and Montana objected to their respective designations and counter-designations of the deposition testimony of Patrick Fox, (California Franchise Tax Board Representative) Laura Shuck, Joel Silverman, Dan Bucks, and a representative of the Idaho State Tax Commission. See Joint Evidentiary Objections at Tables 8, 9, 10, 11, 12, 13, 14, and 15.

On June 13 and June 14, 2013, Judge Markell conducted a trial on the Second Dismissal Motion at which testimony was presented by multiple witnesses and more than 200 exhibits were offered into evidence.[5] After the conclusion of the trial, the court scheduled closing arguments

---

[5] Transcripts of the trial on the Second Dismissal Motion ("Trial Transcripts") were filed on June 20 and 21, 2013. (ECF Nos. 496, 497, 498, 499, and 504). The Trial Transcripts include the live trial testimony of the Alleged Debtor, Flynn, Marks, Donnelly, and Davis, as well as individuals named Jerry Keller ("Keller") and Thomas Morrison ("Morrison"). Flynn testified as an attorney who consulted with the Alleged Debtor's representatives who had negotiated settlements with Idaho and California. Marks, Donnelly, Davis, and Keller testified

for July 5, 2013, with final evidentiary rulings to be issued prior to submission of post-trial briefs.

On July 2, 2013, Judge Markell entered omnibus rulings on the parties' evidentiary objections raised before and during trial, including those set forth in the Joint Evidentiary Objections ("Omnibus Evidentiary Rulings").  (ECF No. 512).

On July 3, 2013, post-trial closing briefs were filed by the Alleged Debtor and by Montana.  (ECF Nos. 515 and 516).

On July 5, 2013, closing arguments were presented by counsel and the Second Dismissal Motion was taken under submission.[6]

On July 10, 2013, Judge Markell entered an "Order Granting Motion to Dismiss Involuntary Case" ("Second Dismissal Order").  (ECF No. 528).  The court found that the Alleged Debtor had at least 12 creditors as of the date of the Involuntary Petition and concluded that the petition therefore must be supported by at least 3 qualifying creditors under Section 303(b)(1).  See Second Dismissal Order at 5:9 to 9:2.  The court further held that if any amount of a petitioning creditor's claim is subject to a bona fide dispute, the creditor is disqualified from filing or joining in an involuntary petition under Section 303(b).  Id. at 9:3 to 14:2.  Based on the evidence presented, Judge Markell found that Idaho's claim was subject to bona fide dispute because its acceptance of a discounted settlement inferred the petitioning creditor's own concerns about the Alleged Debtor's liability.  Id. at 14:4-15.  The court also found that California's claim was subject to bona fide dispute because the settlement of its claim required the existence of a good faith dispute to serve as consideration for an enforceable settlement agreement.  Id. at 14:16 to 15:3.  Judge Markell concluded that because the claims of both Idaho

---

as current or former employees with the Montana Department of Revenue.  Direct testimony declarations from Flynn, Marks, Donnelly, Davis, and Keller were admitted into evidence, subject to the court's subsequent rulings on the Joint Evidentiary Objections.  The Alleged Debtor, Flynn, Marks, Donnelly, Davis, and Keller were subject to cross-examination at trial. Morrison was offered by Montana as a percipient witness and as an expert witness, but the court sustained the Alleged Debtor's objection to his testimony in both capacities.

[6] A transcript of the closing arguments on the Second Dismissal Motion was filed on July 8, 2013.  (ECF No. 525).

1    and California were subject to bona fide dispute, both were disqualified as petitioning creditors.

2    Id. at 15:4-6.  The court further concluded that YCLT qualified as a creditor that joined in the

3    petition under Section 303(c) notwithstanding a possible contingency or dispute as to its claim.

4    Id. at 15:7 to 16:8.  Finally, Judge Markell found that at least part of Montana's claim was

5    subject to bona fide dispute as to liability and amount, thereby disqualifying Montana from being

6    a petitioning creditor.  Id. at 16:9 to 17:12.  Because the Involuntary Petition was not filed or

7    joined by at least 3 qualifying creditors as required by Section 303(b), Judge Markell concluded

8    that the requirements for involuntary bankruptcy relief had not been met and therefore granted

9    the Second Dismissal Motion.[7]

10          On July 22, 2013, Montana filed a notice of appeal with respect to the Second Dismissal

11   Order. (ECF No. 541).

12          On July 23, 2013, the Alleged Debtor filed an election to have the appeal heard by the

13   United States District Court for the District of Nevada ("USDC") rather than the BAP.  (ECF No.

14   549).  As a result of that election, Montana's appeal of the Second Dismissal Order was

15   transferred to the USDC, assigned to Judge Jennifer Dorsey ("USDC Judge Dorsey"), and

16   denominated Case No. 2:13-cv-01324-JAD ("USDC Appeal").[8]  (USDC ECF No. 4).[9]

17          On July 24, 2013, the Alleged Debtor filed "Timothy L. Blixseth's Motion for Judgment

18   and for Costs and Fees Pursuant to 11 U.S.C. §§105 and 303(i)(1)" pursuant to which the

19   Alleged Debtor requested sanctions against Montana and the YCLT ("303(i)(1) Motion").  (ECF

20   No. 554).

---

22        [7] Judge Markell having found that the Alleged Debtor had 12 or more creditors, Section
23   303(b)(2) would not have applied to allow YCLT alone to file an involuntary petition, even if its
     claim was not subject to bona fide dispute as to liability or amount.

24        [8] Where necessary, "USDC ECF No." will be used in this Order to identify documents
25   filed in the USDC Appeal.

26        [9] Excerpts of the record on appeal were filed with the USDC on August 21, 2014
27   ("USDC Record").  (USDC ECF No. 58).  Copies of the declarations of certain witnesses who
     testified at trial, see note 5, supra, were included in the USDC Record.  (USDC ECF No. 58-11,
28   MER01439 to MER01476).  Copies of the exhibits admitted at trial also were included in the
     USDC Record.

On August 5, 2013, the Alleged Debtor filed a cross appeal of the Second Dismissal Order "with respect to the Bankruptcy Court's ruling regarding the claim of" the YCLT.  (ECF Nos. 566 and 568).  On that same day, an election was filed to have the cross appeal heard by the USDC.  (ECF No. 569).

On August 7, 2013, the cross appeal was referred to the USDC.  (ECF No. 575).

On August 9, 2013, Montana filed in the bankruptcy court a "Petitioning Creditor Montana Department of Revenue's Motion for Stay Pending Appeal" ("Stay Motion").  (ECF No. 583).

On August 15, 2013, the Alleged Debtor filed an objection to the Stay Motion (ECF No. 592) and a supplemental objection on August 30, 2013 (ECF No. 612).

On September 6, 2013, Montana filed a reply in support of the Stay Motion.  (ECF No. 621).

On September 13, 2013, the Bankruptcy Judge William T. Thurman ("Judge Thurman") presided over a hearing on the Stay Motion.  At the conclusion of the parties' arguments, Judge Thurman issued his oral findings of fact and conclusions of law granting the Stay Motion in light of, among other reasons, the "irreparable harm" that Montana could suffer if the Alleged Debtor was allowed to continue seeking discovery of privileged material in furtherance of the 303(i)(1) Motion.[10]

On September 20, 2013, Judge Thurman entered an "Order Granting a Stay of Proceedings Pending Appeal" ("Stay Order") pursuant to which he stayed "all 11 U.S.C. § 303(i) and other post-dismissal proceedings against Montana, pending final resolution of the appeals by Montana and Mr. Blixseth" of the Second Dismissal Order.  (ECF No. 635).  The Stay Order does not expressly reference the Alleged Debtor's cross-appeal or otherwise mention the YCLT.

On October 2, 2013, the Alleged Debtor filed "Timothy L. Blixseth's Motion Pursuant to Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59(e) to Amend Order Granting a Stay of Proceedings Pending Appeal" ("Reconsideration Motion").  (ECF No. 638).  By the Reconsideration Motion,

---

[10] A transcript of the hearing before Judge Thurman was filed on September 18, 2013. (ECF No. 631).

the Alleged Debtor asked the bankruptcy court to lift the stay and authorize him to continue prosecuting the 303(i)(1) Motion, including authorizing him to continue conducting discovery.

On October 23, 2013, Montana filed an objection to the Reconsideration Motion.  (ECF No. 648).

On October 30, 2013, the Alleged Debtor filed a reply in support of the Reconsideration Motion.  (ECF No. 651).

On November 6, 2013, Judge Thurman presided over a hearing on the Reconsideration Motion.  At the conclusion of the parties' arguments, Judge Thurman issued his oral findings of fact and conclusions of law denying the Reconsideration Motion.

On November 12, 2013, Judge Thurman incorporated his oral findings of fact and conclusions of law made at the November 6 hearing into an order denying the Reconsideration Motion ("Reconsideration Order").  (ECF No. 653).

On April 19, 2017, approximately three and a half years after Judge Thurman's entry of the Reconsideration Order, the Alleged Debtor filed a motion in the bankruptcy court seeking a variety of relief, including to lift the Stay Order previously entered in the case, to enter sanctions against Montana for various alleged misconduct, and for a protective order ("Sanctions Motion").  (ECF No. 673).  On the same date, the Alleged Debtor filed a separate motion in the bankruptcy court requesting the YCLT successor trustee to show cause whether he has preserved or destroyed evidence ("OSC Motion").  (ECF No. 674).

On September 12, 2017, the court heard the Alleged Debtor's Sanctions Motion as well as his OSC Motion, and took them under submission.

On December 15, 2017, USDC Judge Dorsey, entered her decision affirming the Second Dismissal Order ("USDC Decision").  (USDC ECF No. 87).  The USDC agreed that the Alleged Debtor had more than 11 creditors and that there were not at least three qualifying creditors. USDC Judge Dorsey therefore affirmed the Second Dismissal Order.

On December 20, 2017, the bankruptcy court entered an order denying the Sanctions Motion.  (ECF No. 728).  On the same date, the bankruptcy court entered an order denying the OSC Motion.  (ECF No. 730).

On January 11, 2018, Montana appealed the USDC Decision to the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit").[11]  (USDC ECF No. 88).

On March 6, 2018, YCLT filed a notice of withdrawal from participation as a petitioning creditor in the Involuntary Proceeding.  (ECF No. 737).

On November 26, 2019, the Ninth Circuit entered its Opinion affirming in part and remanding in part to the bankruptcy court ("Circuit Opinion").  See State of Montana Department of Revenue v. Blixseth, 942 F.3d 1179 (9th Cir. 2019).  Agreeing with Judge Markell and USDC Judge Dorsey, the circuit panel held that "a creditor whose claim is the subject of a bona fide dispute as to amount lacks standing to serve as a petitioning creditor under §303(b)(1) even if a portion of the claim amount is undisputed."  Id. at 1186.  The circuit panel also agreed that "on the petition date, the vast majority of [Montana's] claim remained disputed. As a result, [Montana's] claim was the subject of a bona fide dispute as to amount."  Id. at 1187. The panel's decision then concluded as follows:  "[Montana] also disputes whether Idaho, California, and [YCLT"]'s claims may sustain the petition individually or in combination.  We do not reach these issues because all other petitioning creditors have withdrawn their participation in the underlying bankruptcy proceeding.  Instead, we remand for the bankruptcy court to determine whether this matter should be dismissed for want of prosecution consistent with 11 U.S.C. § 303(j)(3)."  Id.  (Emphasis added.)

On January 6, 2020, the Ninth Circuit entered its order denying the Alleged Debtor's petition for rehearing.  (9th ECF No. 52).

On January 14, 2020, the Ninth Circuit entered its mandate.  (9th ECF No. 53).

On February 19, 2020, the USDC entered the "Order on Mandate," wherein the matter was remanded to the Bankruptcy Court for "further proceedings consistent with the Ninth Circuit's instructions."  (USDC ECF No. 94).

---

[11] Where necessary, "9th ECF No." will be used in this Order to identify documents filed in the proceedings before the Ninth Circuit.

On August 10, 2020, the Alleged Debtor filed and served a request for a status conference and noticed the matter to be heard by the bankruptcy court on September 16, 2020. (ECF Nos. 757 and 758).

On September 11, 2020, Montana filed and served a "Position Paper." (ECF No. 764).

On September 16, 2020, counsel for the Alleged Debtor and counsel for Montana appeared at the status conference at which time the bankruptcy court set deadlines for both parties to file motions in accordance with the instructions from the Ninth Circuit. The motions were ordered to be heard concurrently on November 13, 2020.[12]

On October 9, 2020, Montana filed and served a Motion for Relief from Judgment ("Relief Motion") along with a separate memorandum in support thereof. (ECF Nos. 770 and 771). As directed at the prior status conference, the Relief Motion was scheduled to be heard on November 13, 2020.

On October 9, 2020, the Alleged Debtor filed and served the instant 303(j) Motion. (ECF No. 772). The 303(j) Motion was scheduled to be heard concurrently with the Relief Motion.

On October 14, 2020, the Alleged Debtor also filed and served a Motion to Strike Montana Department of Revenue's Motion for Relief from Judgment ("Strike Motion"). (ECF Nos. 774 and 775). The Strike Motion also was scheduled to be heard concurrently with the Relief Motion and the 303(j) Motion.

On October 30, 2020, an opposition to the 303(j) Motion was filed by Montana ("303(j) Opposition"). (ECF No. 783).

On October 30, 2020, an opposition to the Relief Motion was filed by the Alleged Debtor. (ECF No. 785).

On October 30, 2020, an opposition to the Strike Motion was filed by Montana. (ECF No. 784).

On November 6, 2020, a reply in support of the Relief Motion was filed by Montana. (ECF No. 786).

---

[12] An order incorporating the briefing and hearing schedule was entered on October 15, 2020. (ECF No. 776). Notice of entry of the order was served on all creditors and parties in interest. (ECF No. 778).

On November 6, 2020, an omnibus reply in support of the Strike Motion as well as the 303(j) Motion was filed by the Alleged Debtor. (ECF No. 787).

On November 13, 2020, the concurrent hearing was conducted on the Relief Motion, Strike Motion, and 303(j) Motion.[13]

## DISCUSSION

The Alleged Debtor brings the instant 303(j) Motion seeking to dismiss this Involuntary Proceeding for want of prosecution.[14]  The motion is brought as directed by the mandate of the Ninth Circuit.  The "rule of mandate" applies in bankruptcy proceedings.  See, e.g., Barton Properties v. Blaskey (In re Blaskey), 2016 WL 4191775, at *5 (B.A.P. 9th Cir. Aug. 8, 2016) (bankruptcy court on remand correctly applied the mandate of the Bankruptcy Appellate Panel on prior appeal).  The rule of mandate applies to an appellate decision rendered in the same proceeding.  The Ninth Circuit has explained that

> A district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it...At the same time, the rule of mandate allows a lower court to decide anything not foreclosed by the mandate...A district court is limited by our remand when the scope of the remand is clear...Violation of the rule of mandate is a jurisdictional error...

Hall v. City of Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012) (citations omitted, emphasis added).  See also Stacy v. Colvin, 825 F.3d at 567-68.  As previously mentioned, the Ninth Circuit affirmed the Second Dismissal Order and expressly stated:  "We remand for the bankruptcy court to determine whether this matter should be dismissed for want of prosecution consistent with 11 U.S.C. § 303(j)."  That section of the Bankruptcy Code provides that after

---

[13] The Strike Motion and the Relief Motion are the subject of separate orders entered contemporaneously herewith.

[14] The 303(j) Motion alternatively seeks to confirm that the Involuntary Proceeding was dismissed by the Second Dismissal Order.  That order was affirmed on appeal by both the USDC and the Ninth Circuit.  A separate order denying the Relief Motion has been entered contemporaneously herewith.  Because it is unnecessary to confirm the dismissal under the Second Dismissal Order, the instant order addresses only whether dismissal for want of prosecution is appropriate under Section 303(j).

notice to all creditors and a hearing, an involuntary petition may be dismissed, *inter alia*, "for want of prosecution." 11 U.S.C. § 303(j)(3).[15]

Although the Ninth Circuit as well as the USDC affirmed the Second Dismissal Order, further consideration of whether to dismiss this Involuntary Proceeding for want of prosecution is appropriate in light of the ability of unsecured creditors to join in an involuntary proceeding under Section 303(c). Compare Easthom-Melvin Co. v. Hoffman (In re 69th & Crandon Bldg. Corp.), 97 F.2d 393, 395-96 (7th Cir. 1938)(dismissal of involuntary petition after five year delay cannot occur under the Bankruptcy Act without notice to creditors); O'Connell v. Three Park Avenue Building Co. (In re Blutrich Herman & Miller), 227 B.R. 53, 57 (Bankr. S.D. N.Y. 1998) (dismissal for want of prosecution on notice to creditors "affords them the opportunity to join in the involuntary petition and contest the dismissal…").

Bankruptcy Rule 1018 addresses contested involuntary petitions. Various provisions of Part VII of the Bankruptcy Rules apply, in addition to any other provision of Part VII that the

---

[15] The Ninth Circuit directed the bankruptcy court to determine whether the involuntary proceeding should be dismissed for "want of prosecution" under Section 303(j). Section 303(j) permits an involuntary petition to be dismissed after notice and a hearing on two other bases: (1) "on the motion of a petitioner; [or] (2) on consent of all petitioners and the debtor..." 11 U.S.C. §303(i)(1 and 2). As to dismissal for want of prosecution, a leading bankruptcy treatise observes as follows:

> Dismissal under section 303(j)(3) occurs when the petitioning creditors fail to pursue the action. For example, if the debtor or nonjoining general partner files an answer or a motion to dismiss pursuant to section 303(d) and the petitioning creditors fail to show up at the scheduled hearing, dismissal is a possible solution. It is unclear as to whom can move for dismissal under this section. Given the language used, the movant is not restricted in the manner of sections 303(i)(1) and (2).

> If dismissal is not possible under any of the paragraphs of subsection (j), that does not mean a case cannot be dismissed. For example, if the court does not have personal jurisdiction over any of the parties and an order for relief has been entered in error, the court can vacate the order for relief and dismiss the case.

2 COLLIER ON BANKRUPTCY ¶303.34 (Richard Levin & Henry J. Sommers, eds., 16th ed. 2020).

court directs.  Because involuntary dismissal of the Involuntary Proceeding is requested by the
Alleged Debtor, the court applies Bankruptcy Rule 7041 that incorporates Civil Rule 41(b).  The
latter rule provides in pertinent part that "If the plaintiff fails to prosecute…, a defendant may
move to dismiss the action or any claim against it."  Civil Rule 41(b) further provides that
"Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any
dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to
join a party under rule 19 – operates as an adjudication on the merits."  Dismissal under Civil
Rule 41(b) is discretionary.  See generally 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
FEDERAL PRACTICE AND PROCEDURE: CIVIL §2370 ["Involuntary Dismissal – Want of
Prosecution"] (4th ed. 2020).  Five factors must be weighed when considering a motion to
dismiss for lack of prosecution: "'(1) the public's interest in expeditious resolution of litigation;
(2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the
public policy favoring disposition of cases on their merits; and (5) the availability of less drastic
sanctions."'  Epperson v. Wal-Mart Stores, Inc., 809 Fed.Appx. 437 (9th Cir. 2020), quoting
Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998).  See Atkinson v. Izzo, 2020
WL 6684976, at *1 (D.Nev. Nov. 12, 2020).

   In the instant case, the Involuntary Petition was filed by three petitioning creditors on
April 5, 2011, all of whom have been determined to be ineligible under Section 303(b).  Two of
the petitioning creditors – Idaho and California – voluntarily withdrew from further participation
on April 20, 2011.  Prior to entry of the Second Dismissal Order, one other creditor – YCLT –
filed a joinder in the Involuntary Proceeding under Section 303(c) on May 8, 2013.[16]  On July
10, 2013, the Second Dismissal Order was entered wherein the bankruptcy court found that the
claims of all three petitioning creditors were subject to bona fide dispute.  Dismissal of the
Involuntary Proceeding was required because it was not filed by a sufficient number of creditors
qualified to file an involuntary petition under Section 303(b).

---

[16] As previously recited, on March 2, 2018, YCLT voluntarily withdrew from further
participation in the Involuntary Proceeding.

After the appellate mandate was received by the bankruptcy court, a status conference was requested upon notice to all creditors and parties in interest, including Idaho, California, and YCLT.  Notice of the proceedings on the 303(j) Motion, as well as the Relief Motion and Strike Motion, was served on all creditors and parties in interest.  As previously mentioned, Section 303 permits a creditor holding a noncontingent unsecured claim to join in an involuntary petition before the case is dismissed or an order for relief is entered.  See 11 U.S.C. §303(c).

As of the hearing on this 303(j) Motion as well as the Relief Motion, close to a decade has passed since the Involuntary Petition was filed.  Since April 20, 2011, only Montana has continuously pursued this Involuntary Proceeding against the Alleged Debtor.  For approximately five years, YCLT apparently was interested in pursuing this Involuntary Proceeding against the Alleged Debtor but gave up approximately two years before the Ninth Circuit mandate was received by this bankruptcy court.  During this entire period of time, no other unsecured creditors having any noncontingent claims have joined or sought permission to join in the Involuntary Proceeding under Section 303(c), nor to otherwise intervene.

Montana maintains that it has "vigorously prosecuted" this Involuntary Proceeding.  See 303(j) Opposition at 7:16 to 8:28.  There is no question that Montana has been on the defensive more than the offensive throughout this proceeding.  No doubt the prospect of defending the Alleged Debtor's likely claim under Section 303(i) adds to Montana's vigor.  The record, however, reflects that no unsecured creditors holding noncontingent claims against the Alleged Debtor as of the commencement of this prolonged proceeding have joined as permitted by Section 303(c).[17]  Moreover, Montana has offered no evidence that any unsecured creditors

---

[17] Montana laments that an involuntary debtor cannot defeat jurisdiction by settling with petitioning creditors.  See 303(j) Opposition at 7:22 to 8:19, citing Liberty Tool, & Mfg. v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Systems, Inc.), 277 F.3d 1057, 1065 (9th Cir. 2002).  The settlement of petitioning creditor claims in bona fide dispute, however, is not prohibited.  As the Ninth Circuit explained in Vortex Fishing: "Appellants' contention calls for an omniscience far beyond the scope of the judiciary.  At the time it made its [sua sponte] motion, the Bankruptcy Court could well have believed that the three remaining petitioners had bona fide claims.  If it had suspected that none of the other claims were bona fide, the court certainly was not obligated to force Byron-Lambert to remain a party on the chance that a bona fide creditor would turn up.  The Bankruptcy court did not abuse its discretion in allowing Byron-Lambert to withdraw as a petitioner."  Id. at 1065-1066 (emphasis added).  Judge Markell

17

eligible to join under Section 303(c) have been prohibited from doing so or have even expressed an interest in doing so.

Under these circumstances, dismissal of this nearly decade-long case serves the public interest in the expeditious resolution of bankruptcy proceedings. This is particularly important in involuntary proceedings where creditors may initiate the process if and only if their claims are not subject to bona fide dispute. While every court needs to manage its docket, highly contested involuntary bankruptcy proceedings are uniquely burdensome given the amount of motion practice typically required before an order for relief can be entered or denied. Greater uncertainty exists in the present case inasmuch as eligible unsecured creditors who might join in the proceeding under Section 303(c) have never been suggested much less identified. Further exposure to the time, legal expense and burden of this Involuntary Proceeding certainly would prejudice the Alleged Debtor, especially because the automatic stay under Section 362(a) with respect of property of the bankruptcy estate continues in effect under Section 362(c).[18]  More

_____

specifically found that the claims of all three petitioning creditors – Montana, Idaho, and California – were subject to bona fide dispute. Under <u>Vortex Fishing</u>, it was not an abuse of discretion to treat the claims of Idaho and California as withdrawn due to the settlements reached with the Alleged Debtor. Moreover, nothing in <u>Vortex Fishing</u> prohibits the presence of a bona fide dispute from being inferred by a settlement with a petitioning creditor. Montana had every opportunity at trial to support its interpretation of the evidence, but it failed.

[18] The automatic stay arose on April 5, 2011, when the Involuntary Petition was filed. <u>See</u> 11 U.S.C. §362(a). A bankruptcy estate was created consisting of all property in which the Alleged Debtor had a legal or equitable interest as of the Petition Date. <u>See</u> 11 U.S.C. §541(a)(1). The automatic stay of acts against property of the bankruptcy estate continues until the property is no longer property of the estate. <u>See</u> 11 U.S.C. §362(c)(1). The automatic stay of any other act encompassed by Section 362(a) continues until the bankruptcy case is closed, dismissed, or an individual debtor is granted or denied a discharge. <u>See</u> 11 U.S.C. §362(c)(2)(A, B, and C). No other party in interest has sought to prevent closure or dismissal of this Involuntary Proceeding. Obviously, the Alleged Debtor is not seeking a bankruptcy discharge in this case. Under these circumstances, continuation of the automatic stay unnecessarily may have certain detrimental consequences to the Alleged Debtor as well as other creditors. <u>See generally</u> 2 COLLIER ON BANKRUPTCY, <u>supra</u>, ¶ 303.23[1] and [2] ("The automatic stay of section 362(a) comes into effect upon the filing of a petition under section 303, just as it does when a voluntary petition is filed…One clear consequence of the stay during the gap period is that a post-filing creditor cannot enforce its claim absent stay relief. Thus, the debtor operates as if there were no bankruptcy, although creditors may be unwilling to deal with the debtor on this basis since they are subject to the stay. The stay cannot be circumvented by a stipulation entered into by the

important, the dispute over the eligibility requirements under Section 303(b) in this case has been decided by three different courts reaching the same outcome.  Thus, both the public policy in favor of disposing of cases on the merits as well as the public policy in favor of expeditious resolution are served by dismissal.  Finally, a sanction less drastic than dismissal of this Involuntary Proceeding has not been identified by Montana, and the court can fathom none. Maintaining this Involuntary Proceeding against the Alleged Debtor, in the hope that other creditors who have not voluntarily joined in the proceeding will suddenly emerge, take an interest in joining the petition after two adverse appellate decisions, and willingly expose themselves to possible sanctions under Section 303(i), is unrealistic at best.[19]

Based on the foregoing, the court concludes that dismissal of this Involuntary Proceeding for want of prosecution is appropriate under Section 303(j).  Under Civil Rule 41(b), this dismissal of the Involuntary Proceeding is for want of prosecution only, and is not an adjudication of the merits of the petitioners' claims, if any.

**IT IS THEREFORE ORDERED** that the Motion Confirming Dismissal of Involuntary Petition, or, in the Alternative, Motion to Dismiss Involuntary Petition for Want of Prosecution Pursuant to 11 U.S.C. § 303(j), Docket No. 772, be, and the same hereby is, **GRANTED for want of prosecution**.

**IT IS FURTHER ORDERED** that dismissal under Federal Rule of Civil Procedure 41(b) is not on the merits of the substantive claims, if any, of the petitioning creditors.

**IT IS FURTHER ORDERED** that jurisdiction of this court is reserved with respect to claims, if any, brought under 11 U.S.C. §303(i).

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:

---

debtor and a secured creditor authorizing the stay to be lifted without prior court approval or notice to other creditors…Section 541, which creates an estate, applies during the gap.").

[19] Because dismissal of an involuntary proceeding is a necessary predicate to the Alleged Debtor seeking sanctions under Section 303(i), dismissal itself arguably <u>is</u> the less drastic sanction.

MARK G ARNOLD
HUSCH BLACKWELL LLP
190 CARONDELET PLAZA, SUITE 600
ST. LOUIS, MO 63105

CHARLES D. AXELROD
FOX ROTHSCHILD LLP
1800 CENTURY PARK EAST, SUITE 300
LOS ANGELES, CA 90067

TODD M BAILEY
CALIFORNIA FRANCHISE TAX BOARD
LEGAL DIVISION MS A 260
FRANCHISE TAX BOARD
P.O. BOX 1720
RANCHO CORDOVA, CA 95741-1720

ATHANASIOS BASDEKIS
209 CAPITOL STREET
CHARLESTON, WV 25301

CHRISTOPHER J CONANT
CONANT LAW LLC
730 17TH STREET, SUITE 200
DENVER, CO 80202

FOX ROTHSCHILD, LLP
3800 HOWARD HUGHES PKWY, STE 500
LAS VEGAS, NV 89169

# # #